SHIELDS, Arnett L.

v.

CONSOLIDATED RAIL
CORPORATION

v.

BETHLEHEM STEEL CORPORATION,
Appellant.

Nos. 86–1333, 86–1388.

United States Court of Appeals,
Third Circuit.

Argued Dec. 2, 1986.

Decided Jan. 29, 1987.

Howard M. Klein (argued), Conrad & O'Brien, Philadelphia, Pa., Walter E. Morrissey, Bethlehem Steel Corp., Bethlehem, Pa., for appellant.

D. Scott Morgan (argued), Consolidated Rail Corp., Philadelphia, Pa., for appellee.

Before ALDISERT, Chief Judge, WEIS, Circuit Judge, and FISHER, Judge.*

**OPINION OF THE COURT**

ALDISERT, Chief Judge.

This case requires us to determine whether the district court properly applied Pennsylvania choice of law precepts in a contribution claim by a defendant against a

* Honorable Clarkson S. Fisher, Chief Judge of the United States District Court for the District of New Jersey, sitting by designation.

third-party defendant arising out of an action under the Federal Employers' Liability Act, 45 U.S.C. § 51 et seq., against Consolidated Rail Corporation ("Conrail"). Because we hold that Indiana law, and not Pennsylvania law, governs the claim for contribution, we will reverse the district court's denial of third-party Bethlehem Steel Corporation's motion for judgment notwithstanding the verdict and remand these proceedings to the district court with a direction that it enter judgment in favor of Bethlehem as a matter of law.

## I.

This appeal evolves from a railroading accident that occurred at Bethlehem Steel Corporation's Burns Harbor, Indiana steel plant. At the time of the accident, Conrail provided twenty-four hour in-plant railroad switching services for the plant and, in essence, ran the short-line railroad within the steel mill. The Burns Harbor plant is the only Bethlehem steel mill in the United States where Conrail performed this in-plant switching service.

In the early morning hours of December 11, 1983, Arnett Shields, a Conrail employee, was working with a three-man crew responsible for switching railroad cars from track 513 to track 511 on the plant premises. Shields was assigned the task of throwing the switch at track 511. The switch was located in an earthen depression or hole that was surrounded by a mound of dirt. Freezing rain had fallen throughout the night and conditions were icy at the mill. When Shields stepped on the mound surrounding the switch, he slipped on ice, fell directly into the switch, and was seriously injured.

Shields brought suit under FELA against Conrail alleging negligence and seeking damages for injuries sustained. Conrail impleaded Bethlehem as a third-party defendant under Rule 14, F.R.Civ.P., seeking indemnification or contribution. This claim falls within the ancillary jurisdiction of the federal courts. *Schwab v. Erie Lackawanna Railroad Co.*, 438 F.2d 62, 67 (3d Cir. 1971). The district court bifurcated the case and tried the liability issue before a jury. After all the evidence was received, Bethlehem moved for a directed verdict, arguing that Indiana law governed Conrail's third-party complaint and that, as a matter of Indiana law, Conrail could not assert a claim for indemnity or contribution against Bethlehem. The district court applied Indiana law to the liability issue, but ruled that Pennsylvania law governed the third-party claim and submitted the case to the jury.

The jury returned its verdict by answers to special interrogatories and found Conrail liable to Shields. On the third-party complaint, the jury refused to hold Bethlehem liable for indemnity, but ordered it to pay Conrail twenty-five percent contribution.

## II.

As a threshold matter, we have decided to address *sua sponte* our appellate jurisdiction. On March 3, 1986, Bethlehem filed a motion for judgment n.o.v. under Rule 50(b), F.R.Civ.P., or, in the alternative, for a new trial under Rule 59(b). In its motion, Bethlehem argued that the district court incorrectly applied Pennsylvania law to Conrail's contribution claim. On April 23, 1986, the district court filed a memorandum opinion that discussed the choice of law issue and concluded that Pennsylvania law controlled the contribution claim. The opinion, however, dismissed Bethlehem's motion for lack of prosecution because Bethlehem supposedly failed to order a transcript of the trial. *Shields v. Consolidated Rail Corp.*, No. 85–0063, slip op. at 4–5 (E.D.Pa. Apr. 23, 1986), *reprinted in* app. at 12A–16A [Available on WESTLAW, DCTU database]. The district court entered an appropriate order the same day.

Bethlehem promptly moved for reconsideration of this order and, on May 23, 1986, filed notice of appeal with this court (no. 86–1333). On June 16, the district court amended its April 23 memorandum opinion and order, deleted all references to Bethlehem's failure to order the transcript, and vacated its order dismissing the post-trial

motions. App. at 18A–19A. In its stead, the court entered a new order denying Bethlehem's motions. On June 19, Bethlehem filed a notice of appeal from this new order (no. 86–1388).

Bethlehem's pending motion for reconsideration in the district court did not render its May 23 appeal premature under Rule 4(a)(4), F.R.App.P. In *Turner v. Evers,* 726 F.2d 112, 114 (3d Cir.1984), we said:

> [W]here, as here, a motion styled as one for reconsideration is made by the same party that *lost* an earlier motion covered by Rule 4(a)(4) and the factual and legal issues surrounding the earlier motion and the current motion are roughly similar, we see no good reason to allow such motions either to postpone the time for appeal or to destroy appeals filed during their pendency.

*See also Kelly v. Pennsylvania Railroad Co.,* 228 F.2d 727, 729–30 (3d Cir.1955), *cert. denied,* 351 U.S. 925, 76 S.Ct. 782, 100 L.Ed. 1445 (1956); 9 J. Moore, B. Ward & J. Lucas, *Moore's Federal Practice* ¶ 204.-12[1], at 4–67 (1986). In any event, Bethlehem's June 19 appeal, filed within thirty days of the district court's order denying Bethlehem's post-trial motions, properly vests this court with appellate jurisdiction under Rule 4(a)(1). *See Griggs v. Provident Consumer Discount Co.,* 459 U.S. 56, 60–61, 103 S.Ct. 400, 403, 74 L.Ed.2d 225 (1982); *Boggs v. Dravo Corp.,* 532 F.2d 897, 899 (3d Cir.1976).

### III.

■ Our analysis of the merits begins by recognizing that third-party actions for contribution arising out of FELA claims are governed by state law. *Denicola v. G.C. Murphy Co.,* 562 F.2d 889, 895 (3d Cir. 1977); *Kennedy v. Pennsylvania Railroad Co.,* 282 F.2d 705, 709 (3d Cir.1960); *see also Alabama Great Southern Railroad Co. v. Chicago & Northwestern Railway Co.,* 493 F.2d 979, 983 (8th Cir.1974) (citing cases). Here, the question of which state's law applies is of crucial significance. If Indiana law applies, Conrail has no right to contribution. *Jackson v. Record,* 211 Ind.

141, 5 N.E.2d 897, 898 (1937); *Elcona Homes Corp. v. McMillan Bloedell, Ltd.,* 475 N.E.2d 713, 715 (Ind.Ct.App.1985); Ind. Code Ann. § 34–4–33–7 (Burns Supp.1986). If Pennsylvania law applies, Conrail possesses a right of contribution among joint tortfeasors. *Elder v. Orluck,* 515 A.2d 517, 519 (Pa.1986); *Rivera v. Philadelphia Theological Seminary,* 507 A.2d 1, 12 (Pa. 1986); 42 Pa.Cons.Stat. § 8324 (1982).

### A.

■ A district court's choice of law determination is governed by the choice of law rules of the forum state. *Klaxon Co. v. Stentor Electric Manufacturing Co.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941); *American Contract Bridge League v. Nationwide Mutual Fire Insurance Co.,* 752 F.2d 71, 74 (3d Cir. 1985). Because Pennsylvania was the forum for this action, its choice of law rules apply to Conrail's claim for contribution.

Modern Pennsylvania choice of law principles first emerged from Justice Samuel J. Roberts' landmark opinion in *Griffith v. United Air Lines, Inc.,* 416 Pa. 1, 203 A.2d 796 (1964). In *Griffith,* Pennsylvania abandoned the strict *lex loci delicti* rule and essentially adopted the Restatement (Second) view commonly known as the most significant relationship test:

> Contacts considered vital in determining the state of most significant relationship include place of injury, place of conduct, domicile of the parties, and the place where the relationship between the parties is centered. § 379(2) [now Restatement (Second) of Conflict of Laws § 145(2) (1971)]. The importance of the respective contacts is determined, in part, by considering the issues, the nature of the tort, and the purposes of the tort rules involved. § 379(3) [now § 145, comments c–f]. However, Section 379a [redrafted as § 146] of the new Restatement provides: "In an action for a personal injury, the local law of the state where the injury occurred determines the rights and liabilities of the parties, unless some other state has a more significant

relationship with the occurrence and the parties as to the particular issue involved, in which event the local law of the latter state will govern."

416 Pa. at 15, 203 A.2d at 802–03. Determining which state's law governs the present contribution claim involves more than "a mere counting of contacts." *Cipolla v. Shaposka*, 439 Pa. 563, 566, 267 A.2d 854, 856 (1970). Rather, we must weigh the contacts on a qualitative scale according to their relation to the policies and interests underlying the contribution issue. *Id.; Myers v. Commercial Union Assurance Co.*, 506 Pa. 492, 496, 485 A.2d 1113, 1116 (1984); *Melville v. American Home Assurance Co.*, 584 F.2d 1306, 1311 (3d Cir.1978).

### B.

■ Bethlehem does not dispute the district court's use of the flexible choice of law methodology adopted in *Griffith* to determine the question of which state's law applies to Conrail's contribution claim. It contends, however, that the district court misapplied the *Griffith* test when it determined that Pennsylvania law controls the issue. Bethlehem argues that Indiana law should govern the contribution claim and that, since Indiana does not permit contribution among joint tortfeasors, the district court should have granted its motion for judgment n.o.v. as a matter of law. Our review of this legal issue is plenary. *Blakesley v. Wolford*, 789 F.2d 236, 238 n. 5 (3d Cir.1986); *Dent v. Cunningham*, 786 F.2d 173, 175 (3d Cir.1986).

### IV.

■ Pennsylvania and Indiana law governing contribution among joint tortfeasors reflect two fundamentally different policies. Pennsylvania's contribution framework is based on the principle that parties equally responsible for wrongdoing should equally pay for that wrongdoing. *Pacific Indemnity Co. v. Linn*, 766 F.2d 754, 769 (3d Cir.1985); *Freeman v. Sundheim*, 348 Pa. 248, 251, 35 A.2d 295, 297 (1944); *Embrey v. Borough of West Mifflin*, 257 Pa.

Super. 168, 185, 390 A.2d 765, 774 (1978). This "collective fault, collective responsibility" notion is grounded in equity. *In re Mellon's Estate*, 347 Pa. 520, 535–36, 32 A.2d 749, 757 (1943); *see Texas Industries, Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630, 635, 101 S.Ct. 2061, 2064, 68 L.Ed.2d 500 (1981). In contrast, Indiana's policy of no contribution among joint tortfeasors rests on the belief that its tort compensation scheme is best served by imposing the entire risk of loss on the party that is found liable to the plaintiff. *Texas Industries*, 451 U.S. at 634, 101 S.Ct. at 2063; *Jackson v. Record*, 5 N.E.2d at 898–99. "A plaintiff has the option of proceeding against only one of the joint tortfeasors or after obtaining judgment against all, to levy execution against only one of several joint tortfeasors." *Barker v. Cole*, 396 N.E.2d 964, 971 (Ind.Ct.App.1979).

Obviously, then, a significant conflict exists between Pennsylvania and Indiana on the issue of contribution among joint tortfeasors. Under *Griffith/Cipolla*, we must proceed to examine the relevant contacts of each of the two states that bear on the instant litigation. *Blakesley*, 789 F.2d at 240–41; *McSwain v. McSwain*, 420 Pa. 86, 94, 215 A.2d 677, 682 (1966).

### V.

Bethlehem urges that the application of relevant contacts to the state interests involved in this case "compels the application of Indiana law." Br. for appellant at 22. We agree.

### A.

Undisputed facts control the choice of law issue and point to only one reasonable conclusion. Shields slipped and fell in Indiana. The accident was not a fortuitous event, but arose out of an established relationship in Indiana among the parties. Bethlehem had requested Conrail to perform a switching service in Indiana; Conrail voluntarily agreed to do so. In operating its short-line railroad, Conrail remained present on Bethlehem's Burns Harbor

property twenty-four hours a day. Cases applying the *Griffith/Cipolla* test make clear that where "the place where the injury occurred was not fortuitous, as for example, in an airplane crash, the place of injury assumes much greater importance, and in some instances may be determinative." *Blakesley*, 789 F.2d at 243; *Broome v. Antlers' Hunting Club*, 595 F.2d 921, 924 (3d Cir.1979). The conduct of all the parties took place in Indiana, Shields' accident being a product of Conrail's operations at the Burns Harbor plant.

Moreover, Shields was an Indiana resident at the time and worked out of Conrail's Burns Harbor facilities. Conrail ran a short-line railroad on Bethlehem's property. Because the Burns Harbor mill was the only plant in the country where Conrail performed in-plant switching services for Bethlehem, the Bethlehem-Conrail relationship was indisputably unique to Indiana. The plant's day-to-day operations had little involvement with Pennsylvania.

Notwithstanding these facts, the district court determined that "Pennsylvania has a significant interest in having its law applied to this controversy between two of its citizens." *Shields v. Consolidated Rail Corp.*, No. 85–0063, slip op. at 3–4 (E.D.Pa. Apr. 23, 1986), *reprinted in* app. at 12A–16A [Available on WESTLAW, DCTU database]. In so holding, the district court discounted Conrail's voluntary choice to perform a unique service in Indiana and failed to acknowledge Indiana's interest in having its law applied to a dispute that concerns the consequences of torts committed within that state. Rather, the court grounded its determination on the basis that Conrail is incorporated in Pennsylvania and Conrail and Bethlehem have their principal places of business there.

We think, however, that Pennsylvania courts will look beyond these satellite circumstances in determining which state's law to apply. *See, e.g., Myers v. Commercial Union Assurance Co.*, 506 Pa. 492, 496, 485 A.2d 1113, 1116 (1984) (in evaluating the interests of one jurisdiction over another, a court must view the contacts qualitatively rather than quantitatively); *Elston v. Industrial Lift Truck Co.*, 420 Pa. 97, 109–10, 216 A.2d 318, 324 (1966) (although party seeking contribution was a Pennsylvania corporation, New Jersey law governed the third-party claim arising out of a New Jersey work-related injury). Any interest Pennsylvania has in applying its law of contribution to this claim is insignificant when compared to the parties' Indiana-based relationship and the reality that all events relevant to the contribution claim occurred in that state.

**B.**

Furthermore, to apply Pennsylvania law in this situation would result in the anomaly of having laws of different states govern related facts of the same case. The district court applied Indiana law to determine Bethlehem's liability—its duties and obligations as a landowner. App. at 195A. Yet if it is held to contribution under Pennsylvania law, Bethlehem will most likely be unable to obtain contribution from Midwestern Construction Company, the independent contractor that maintained the switch. App. at 176A. That company apparently has no relationship with Pennsylvania and any claim that Bethlehem asserts against it would, in all likelihood, be governed by Indiana law with the result that Bethlehem would be unable to shift any of its loss to the party arguably responsible for the defect in this case. Thus, Bethlehem would be unable to invoke the same equitable Pennsylvania policy that Conrail seeks to have imposed on Bethlehem.

**VI.**

We, therefore, conclude that the district court erred in applying Pennsylvania law to Conrail's contribution claim. Having elected to transact business in Indiana and having exposed itself to a policy that fails to give rein to contribution, Conrail's rights must be governed by that determination. We cannot agree with the district court's conclusion that Pennsylvania law travels with Conrail wherever it runs.

Because we hold that Indiana law governs Conrail's third-party contribution claim, we will reverse the district court's denial of Bethlehem's motion for judgment notwithstanding the verdict.[1] We will remand this case to the district court with a direction that it enter judgment in favor of Bethlehem.

---

1. In light of our choice of law holding, we need not address Bethlehem's additional contentions on appeal.