Elizabeth F. SHUDER and
Robert J. Shuder

v.

McDONALD'S CORPORATION, a
corporation, Appellant.

No. 88-3121.

United States Court of Appeals,
Third Circuit.

Argued Sept. 1, 1988.

Decided Oct. 4, 1988.

Chester S. Fossee (argued), Reale, Fossee and Ferry, Pittsburgh, Pa., for appellant.

Lloyd F. Engle, Jr. (argued), Lyn C. Ackerman, Kuhn, Engle & Stein, Pittsburgh, Pa., for appellees.

Before SLOVITER, GREENBERG and COWEN, Circuit Judges.

OPINION OF THE COURT

GREENBERG, Circuit Judge.

This matter is before the court on appeal from an order of the district court entered on January 22, 1988 denying a motion by defendant McDonald's Corporation for a judgment notwithstanding the verdict in this personal injury action arising from the injury of plaintiff Elizabeth F. Shuder at a McDonald's restaurant on October 17, 1982 in Virginia Beach, Virginia. We will reverse and remand the matter for entry of an order granting the motion.

While the circumstances of Mrs. Shuder's accident may not have been unusual, surely the court proceedings which followed were. Mrs. Shuder and Robert J. Shuder, her husband, Pennsylvania citizens, were patrons at the McDonald's on

October 17, 1982. After the Shuders left the restaurant she fell on the restaurant parking lot and was injured. Consequently, they filed this diversity of citizenship action on February 28, 1984 in the United States District Court for the Western District of Pennsylvania against McDonald's. Mr. Shuder joining as a plaintiff to assert a loss of consortium. In their complaint, the Shuders recited that Mrs. Shuder stumbled and fell over an abruptly raised portion of the parking lot. They alleged that McDonald's had a duty to maintain the area in a safe condition for travel, but that the place where Mrs. Shuder fell was inadequately lighted and was not marked or painted to distinguish it from other portions of the parking lot. It was further alleged that McDonald's should have had or did have knowledge of this dangerous condition. McDonald's filed an answer denying that it owned, controlled, managed or operated the business.

On October 10, 1984 Mrs. Shuder filed a diversity action in the United States District Court for the Eastern District of Virginia against McDonald's Restaurants of Virginia, Inc. (McDonald's Virginia) to recover damages for the same injuries again alleging that she stumbled and fell over an abruptly raised portion of the parking lot. McDonald's Virginia is a franchisee of McDonald's and apparently is owned by McDonald's. She repeated her assertions that the property was inadequately lighted and was not marked or painted to distinguish it from other sections of the parking lot. She alleged, however, that the premises were owned and operated by McDonald's Virginia and were under its care, direction, supervision, control and maintenance. She asserted that McDonald's Virginia should have had or did have knowledge of this dangerous condition. The only material differences between the Pennsylvania and Virginia complaints were that Mr. Shuder was a plaintiff in Pennsylvania and not in Virginia and the defendants were different, though related. McDonald's Virginia filed an answer denying liability. McDonald's subsequently moved to transfer the Pennsylvania action to the United States District Court for the Eastern District of Virginia under 28 U.S.C. § 1404(a) but this motion was opposed by the Shuders and was denied by an order filed January 22, 1985.

Though filed after the Pennsylvania case, the Virginia case was the first to reach a jury. In his charge the district judge in Virginia told the jury that Mrs. Shuder was obliged to prove that McDonald's Virginia was negligent and that its negligence was a proximate cause of her injuries. He instructed the jury that McDonald's Virginia had the duty to Mrs. Shuder to use ordinary care to have the premises in a reasonably safe condition for her use and to use ordinary care to warn her of any unsafe condition which it had created or knew about or by the use of ordinary care should have known about. He further explained that a breach of these duties would constitute negligence. He also told the jury that McDonald's Virginia had raised contributory negligence as a defense and that McDonald's Virginia bore the burden of establishing that there had been contributory negligence and that it proximately caused the injury. In this regard, the district judge charged that Mrs. Shuder had a duty to use ordinary care for her own safety as to a dangerous condition or obstruction of the property if she knew of it, or if it was so open and obvious that she was able to see it or should have been able to see it. The judge told the jury that contributory negligence was a complete defense and that it could not apportion or balance the negligence of the parties to determine which one was more at fault. The jury returned a general verdict for McDonald's Virginia.

Mrs. Shuder appealed to the United States Court of Appeals for the Fourth Circuit which, in an unpublished per curiam opinion on June 9, 1986, affirmed. In its opinion the Court of Appeals pointed out that there was a sharp controversy as to whether the parking lot was lighted at the time of the accident but that after being carefully instructed by the district judge, the jury apparently accepted the evidence presented by McDonald's Virginia.

Thereafter, McDonald's moved for summary judgment in the Pennsylvania action. It recited that McDonald's Virginia operated the Virginia Beach restaurant under a franchise/license agreement and, if anything, owed a greater duty to Mrs. Shuder than McDonald's and yet had prevailed in the Virginia action. Thus, in McDonald's view, the liability issues had been determined adversely to the Shuders, thereby entitling it to a summary judgment.

The district judge denied the motion. He held that McDonald's and McDonald's Virginia were not sufficiently in privity for res judicata to apply, as the logical defense for McDonald's Virginia was that the accident was caused by a negligent design of the parking lot by McDonald's. He also held that collateral estoppel could not be applied. He pointed out that he did not have a copy of the jury instructions in the Virginia action and could not ascertain the precise issues resolved in Virginia. He understood that a general verdict had been returned in Virginia and that there was no specific finding that "no negligent condition existed on the property." He indicated that on the record he could not say whether the jury verdict was returned because: (1) the property was not in a negligent condition; (2) McDonald's Virginia was not liable for the condition; or (3) Mrs. Shuder was contributorily negligent. Thus, the district judge could not rule that a finding in Virginia adverse to Mrs. Shuder was preclusive on an identical issue in Pennsylvania and thereby barred the action. The district judge did observe, however, that collateral estoppel might have applied had the jury in Virginia negatively answered an interrogatory asking "was the McDonald's Restaurant property in Virginia Beach in a negligent condition and not reasonably safe for the ordinary use by business invitees." The district judge finally pointed out that McDonald's urged that Virginia law should be applied in the case, but he did not then rule on that point.

McDonald's moved for reconsideration of the order and with its motion supplied the jury charge given in the Virginia action. On August 3, 1987 the district judge denied the motion for reconsideration, reciting in his order that "the jury verdict in the Virginia litigation followed a charge by the judge that the issue to be decided is the negligence of the McDonald's Corporation of Virginia, Inc., the franchisee-owner of the premises, not the defendant in the instant case."

A pretrial conference was then held on November 16, 1987 at which the district judge ruled, citing *Griffith v. United Air Lines, Inc.*, 416 Pa. 1, 203 A.2d 796 (1964), that Pennsylvania law would be applied at the trial. The district judge reached that conclusion as Virginia still recognizes contributory negligence as a defense in tort case whereas Pennsylvania has adopted comparative negligence. The district judge explained, "Pennsylvania is concerned, I think, that its citizens receive full compensation when they are traveling interstate and would not permit a minority common law rule to bar recovery for a citizen of its state litigating an issue in this state. Accordingly, we will apply Pennsylvania law, because of the interest at stake and the public policies of this forum."

The matter was then bifurcated on liability and damages and was tried first on liability. In his charge the district judge explained that the Shuders contended that the elevated portion of the parking lot was a hazard and that McDonald's should have either corrected the problem or warned the public of it. He further explained that the Shuders asserted that the "negligent construction or design defect, combined with the fact that the area was inadequately illuminated on the night in question" caused the accident. He told the jury that McDonald's as the contractor had a duty to exercise reasonable care in the construction of the parking lot and if it failed to do so it would be liable for the injuries to persons lawfully on the premises. He explained that if the contractor designed the lot and made it dangerous for its intended use the contractor would be subject to liability to others for failure to exercise reasonable care in the adoption of a safe plan or safe design. He also charged that the contractor would be subject to liability by reason of the dangerous character of the structure

after the work has been completed and accepted by the owner or possessor of the land. He further indicated that a contractor is required to warn persons lawfully on the property of dangerous conditions if a contractor has reason to know that the conditions will not be discovered by customers using reasonable care. The district judge also gave definitions of negligence and proximate cause.

The district judge explained that McDonald's contended that the accident was caused solely by Mrs. Shuder's negligence or alternatively, that regardless of McDonald's negligence, the Shuders were barred by Mrs. Shuder's contributory negligence. He set forth that McDonald's contended that the areas were well-illuminated and Mrs. Shuder failed to look where she was walking for, if she had, she would have observed the condition which she alleged caused the accident. He indicated that Mrs. Shuder was negligent if she, as an ordinary prudent person under the circumstances then present, failed to exercise reasonable care for her own protection and her lack of care was a substantial factor or proximate cause in bringing about her injury. The district judge explained that McDonald's had the burden of proof on the contributory negligence issue. The district judge instructed the jury that if it found both Mrs. Shuder and McDonald's were negligent, it should determine Mrs. Shuder's percentage of the negligence. The jury returned a verdict finding that the parking lot was negligently designed or constructed, thereby proximately causing the accident, but that Mrs. Shuder was 26% negligent. Of course, under Pennsylvania law this verdict meant that the Shuders would make a partial recovery for their damages. Accordingly, immediately after the liability trial the case was tried on damages and verdicts for the Shuders were returned.

Subsequently, McDonald's moved for entry of a judgment notwithstanding the verdict on the grounds, insofar as germane to this appeal, that the court erred in not granting a directed verdict on the basis of issue preclusion and in not applying Virginia law so that the finding that Mrs. Shuder was negligent required a verdict for McDonald's as Virginia does not have a comparative negligence doctrine and continues to recognize contributory negligence as a complete defense.[1] The judge denied the motion in a memorandum opinion and order on January 22, 1988 and McDonald's has appealed from that order.

■ We first consider whether Pennsylvania or Virginia law should have been applied on the liability issues, our standard of review being plenary. *Petrella v. Kashlan*, 826 F.2d 1340, 1343 (3d Cir.1987). It is well established that a district court in a diversity action will apply the choice of law rules of the forum state in determining which state's law will be applied to the substantive issues before it. *Klaxon v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941). Accordingly, we examine Pennsylvania law to determine whether the substantive law of Virginia or Pennsylvania should have been applied.

In *Griffith v. United Air Lines, Inc.*, 416 Pa. 1, 203 A.2d 796, cited by the district judge, Pennsylvania abandoned the strict lex loci delicti rule which looked to the place of the wrong in tort cases to determine the substantive rights of the parties "in favor of a more flexible rule which permits analysis of the policies and interests underlying the particular issue before the court." 416 Pa. at 21, 203 A.2d at 805. *Griffith* involved an airline crash in Colorado in which a Pennsylvania resident travelling from Philadelphia to Phoenix, Arizona, was killed. The choice between Colorado and Pennsylvania law was critical because of the severe limitation on damages under Colorado but not Pennsylvania law. The court held that Colorado had relatively little interest in the measure of damages because the defendant did not act in reliance on Colorado law, particularly inas-

---

1. McDonald's also unsuccessfully moved for a new trial because of asserted trial errors and has appealed from the denial of that motion. In view of our result we need not set forth the bases for this motion as this aspect of McDonald's appeal is moot.

much as the site of the accident was purely fortuitous. 416 Pa. at 22, 203 A.2d at 806. On the other hand, Pennsylvania's interest in the amount of recovery was great, as the decedent's relationship with the airline was entered into in Pennsylvania where he purchased his ticket, the administration of his estate was in Pennsylvania, and Pennsylvania was concerned with the welfare of his surviving dependents to the end that they obtain full recovery. 416 Pa. at 24, 203 A.2d at 807.

In *Cipolla v. Shaposka,* 439 Pa. 563, 267 A.2d 854 (1970), the Supreme Court of Pennsylvania dealt with a case in which a Pennsylvania resident was injured in Delaware in an automobile accident. The Pennsylvania resident brought an action against his host driver, a Delaware resident driving an automobile registered in Delaware. The issue before the court was whether the legal effect of the guest-host relationship should be determined under Delaware or Pennsylvania law, a crucial matter inasmuch as Delaware but not Pennsylvania had a guest statute barring the action.

The court first determined that the choice of laws question did not present a false conflict as the selection of the law of either state would further the policies of that state since Pennsylvania's policy was to protect plaintiffs and Delaware's was to protect defendants in guest-host situations. 439 Pa. at 566, 267 A.2d at 856. The court was thus required to consider whether Delaware or Pennsylvania had the greater interest in the application of its law to determine the consequence of the guest-host relationship. The court pointed out that Pennsylvania had a relevant contact as the plaintiff was a Pennsylvania resident. On the other hand, Delaware had relevant contacts as the defendant was a resident of Delaware, where the automobile was registered, and insurance rates are predicated on the place where a vehicle is housed. Delaware law was applied because, qualitatively, Delaware's contacts outweighed those of Pennsylvania, and Delaware therefore had the greater interest in having its law applied.

*Miller v. Gay,* 323 Pa.Super. 466, 470 A.2d 1353 (1983), also involved a choice of law question arising from an automobile accident in Delaware which implicated the Delaware guest statute. There, however, the plaintiff was a Delaware resident and the defendant was a Pennsylvania resident. The court held that Delaware law should be applied as Delaware residents should not be accorded rights not given them by their home state simply because a visitor from another state is involved in an accident in Delaware. The court also considered that application of Delaware law was consistent with the Pennsylvania No–Fault Motor Vehicle Act which provided that the right of a victim to sue in tort is determined by the law of the state of his domicile. 323 Pa.Super. at 472, 470 A.2d at 1356.

In *Blakesley v. Wolford,* 789 F.2d 236 (3d Cir.1986), we applied Pennsylvania choice of law principles to determine the applicable substantive law in a diversity dental malpractice action in the United States District Court for the Eastern District of Pennsylvania. In *Blakesley* a Pennsylvania citizen sued a Texas oral surgeon who performed an operation on the plaintiff in Texas. The case was tried under Pennsylvania law and the plaintiff recovered a substantial verdict. The theory of liability was that because of the defendant's failure to disclose its risks, the operation was performed without the plaintiff's informed consent. 789 F.2d at 238. Pennsylvania and Texas have markedly different approaches as to what should be disclosed so that a patient may make an informed decision as Texas focuses on what the surgeon believes should be disclosed so that a reasonable person might decide whether to proceed with the operation and Pennsylvania looks to what the patient might want to know. 789 F.2d at 239–40. Furthermore, Texas but not Pennsylvania had a statutory limit at the time of trial on malpractice recoveries which apparently was exceeded at trial.[2] 789 F.2d at 240.

---

**2.** The point is not clear because while the verdict was for $800,000 the statute allowed $500,-000 plus past and future medical expenses. 789 F.2d at 240.

Pennsylvania thus advances the policies of protecting patients from malpractice and ensuring that malpractice victims are fully compensated. Texas, however, attempts to limit malpractice claims to control health care costs and promote the accessibility of health care in Texas. 789 F.2d at 240. We therefore found that there was a true conflict between Pennsylvania and Texas on the issues of informed consent and damages.

We then examined the relevant contacts of the states bearing on the case. We concluded that as the plaintiff was from Pennsylvania and the defendant was from Texas citizenship was a standoff. However, we found that the injury occurred in Texas, the conduct causing the injury occurred in Texas and the plaintiff voluntarily and intentionally went to Texas for the operation. Furthermore, the final consent for the operation was given in Texas and thus the defendant was entitled to rely on the Texas law of informed consent. Accordingly, we held that Texas law should have been applied. 789 F.2d at 241–43. Consequently, we reversed the judgment and remanded the matter for a new trial.

In *Shields v. Consolidated Rail Corp.*, 810 F.2d 397 (3d Cir.1987), in a Federal Employers' Liability Act case, we again applied Pennsylvania choice of law rules, this time in considering a third-party complaint for contribution. *Shields* involved an action against Conrail for an accident in Indiana at a plant owned by the third-party defendant Bethlehem Steel Corporation. The third-party complaint was governed by state rather than federal law. In a choice between Indiana and Pennsylvania law, the district judge selected Pennsylvania law which permitted contribution instead of Indiana law which did not, predicating his decision on the facts that Conrail is incorporated in Pennsylvania and Conrail and Bethlehem have their principal places of business in Pennsylvania. 810 F.2d at 401. The jury returned a verdict against Conrail but also ordered Bethlehem to make a 25% contribution. Bethlehem appealed.

We held that Indiana law should have been applied. The plaintiff slipped and fell in Indiana and the accident arose from a relationship between Conrail and Bethlehem in that state. The place of the accident was not fortuitous. Further, the district judge applied Indiana law to determine Bethlehem's liability, *i.e.*, its duties and obligations as a landowner. Thus, applying Pennsylvania law on the claim for contribution created the anomaly of having the law of different states govern related facts of the same case. 810 F.2d at 400–01. After considering these factors, we rejected the district judge's conclusion that Pennsylvania law should be applied, as we regarded that state's interest in applying its law of contribution as insignificant compared to the interest of Indiana as demonstrated by its contacts to the incident. Thus, we reversed and remanded the matter to the district court to enter judgment for Bethlehem. 810 F.2d at 401.

We have concluded from our analysis of the foregoing authorities that this case does not involve a false conflict. Virginia has retained the common law rule that a plaintiff's contributory negligence will bar her from recovery so that her negligence will not be compared with that of the defendant. *Litchford v. Hancock*, 232 Va. 496, 499, 352 S.E.2d 335, 337 (1987); *Nehi Bottling Co. v. Lambert*, 196 Va. 949, 954, 86 S.E.2d 156, 159 (1955). This common law policy protects defendants from claims and encourages persons to exercise care for their own safety. By limiting recovery the common law policy should tend to hold down insurance costs. To the extent it protects defendants it is not unlike the Delaware guest statute, discussed above, which has been recognized by the Pennsylvania courts as furthering Delaware policy.

On the other hand, Pennsylvania has adopted comparative negligence and thus follows a plaintiff-protecting policy. 42 Pa. Cons.Stat.Ann. § 7102 (Purdon 1982). Accordingly, applying the law of either Virginia or Pennsylvania will further the policies of that state. Thus, we must determine which state has the greater interest in the application of its law by studying the contacts of each state to the accident relating to the issue before the court and comparing

them on a qualitative scale. *Cipolla*, 439 Pa. at 566, 267 A.2d at 856.

We think it is clear that Virginia has by far the more significant contacts. To start with, the accident occurred in Virginia. Further, the Shuders voluntarily went to that state. Surely Virginia has an interest in how persons conduct themselves within the state. The place of the accident was not fortuitous as, unlike in *Griffith*, this case did not involve a moving instrumentality. Rather, the accident arose from the use of and condition of property, traditionally matters of local control. Indeed, a building permit was obtained for the driveway on which Mrs. Shuder fell. The Shuders, at trial, urged that the property was negligently constructed or designed, again matters of local concern.

We also observe that application of Pennsylvania law here, as in *Shields*, was surely anomalous as the action against McDonald's Virginia was tried under Virginia law, apparently without Mrs. Shuder's objection.[3] Thus, different law was applied not just to *related* facts as in *Shields*, but to the *same facts*, the conduct of Mrs. Shuder and whether it constituted contributory negligence barring the action. Further, the only reason different law was applied was that the substantive law of two states was applied in separate forums. While we realize that the different law was applied in separate cases, we think that that distinction from *Shields* is not material, for certainly these cases could have been consolidated if the Pennsylvania action had been transferred to Virginia or, indeed, one action could have been brought against both defendants. We can hardly conceive that if the entire matter had been tried in Virginia, the district judge would have applied the Virginia law of contributory negligence in the claim against McDonald's Virginia but the Pennsylvania law of comparative negligence in the claim involving McDonald's. We see no reason why the fact that the Shuders chose to splinter their actions should have resulted in different choices of substantive law than would have been made in a single action.

In considering the contacts of the states we recognize that McDonald's is a Delaware Corporation and that the plans for the property were apparently approved in Illinois. But these circumstances do not create contacts with Pennsylvania. Thus, they are neutral factors. In sum, the only contacts with Pennsylvania in this case are that the Shuders reside in that state and Mrs. Shuder received medical treatment there.

The Shuders contend, as they explain in their brief, that Pennsylvania law was properly applied as it is fairer and "more just" than Virginia law as Pennsylvania recognizes comparative negligence and Virginia retains the common law bar of contributory negligence. Further, the Shuders regard Pennsylvania law as fairer as it "recognizes claims for loss of consortium, which Virginia does not." We, however, cannot regard the alleged justness of Pennsylvania law as a valid reason for applying it. The relative liberality to plaintiffs of Pennsylvania law simply demonstrates that application of Pennsylvania law would further the policies of that state. This is a consideration quite separate from the contacts of Pennsylvania to the accident. Indeed, the Pennsylvania courts have not hesitated to apply foreign over domestic law even though they thereby bar claims by their residents. *See, e.g., Cipolla v. Shaposka*, 439 Pa. 563, 267 A.2d 854.

Our conclusion that Virginia law is applicable requires that we reverse the order of January 22, 1988 denying McDonald's motion for a judgment notwithstanding the verdict. It is clear that in Virginia, contributory negligence which is a proximate cause of an accident will bar recovery. *Litchford v. Hancock*, 232 Va. 496, 499, 352 S.E.2d 335, 337; *Nehi Bottling Co. v. Lambert*, 196 Va. 949, 954, 86 S.E.2d 156,

---

**3.** In this regard we point out that it may be reasonably inferred that the Shuders accepted Virginia law for their Virginia complaint from the very fact that Mr. Shuder did not join in the Virginia action to assert a loss of consortium as Virginia does not recognize such claims. Further, they do not contend that they objected in Virginia when the judge did not charge comparative negligence. Thus, they treated the Virginia action as governed by Virginia law.

159. While we recognize that the district judge did not intend to charge the Virginia law of contributory negligence, we do not consider that circumstance material inasmuch as the charge which he did give complied with Virginia law. As we have noted, he charged that Mrs. Shuder was contributorily negligent if, as an ordinary prudent person under the circumstances then present, she failed to exercise reasonable care for her own protection and her lack of care was a substantial factor or proximate cause in bringing about her injury. The Shuders have not asserted that this charge imposed a higher duty on Mrs. Shuder than that required under Virginia law, and we are satisfied it did not. *See, e.g., Litchford v. Hancock*, 232 Va. 496, 497–99, 352 S.E.2d 335, 336–37; *Wright v. Tate*, 208 Va. 291, 295, 156 S.E.2d 562, 565 (1967). Further, the district judge in Pennsylvania charged, as had the district judge in Virginia, that the burden of proof to establish contributory negligence was on the defendant. Overall, the language in the charge used by the judges in the two states with respect to contributory negligence was quite similar as the district judge in Virginia charged that Mrs. Shuder had to use ordinary care for her own safety. Thus, the jury's verdict bars this action.[4]

■■■There is a second independent reason why the judgment notwithstanding the verdict should have been granted. McDonald's urges that this action is barred by

collateral estoppel, a doctrine now referred to as issue preclusion, *see Gregory v. Chehi*, 843 F.2d 111, 115–16 (3d Cir.1988), by reason of the Virginia proceedings. The parties have treated the issue as governed by Pennsylvania rather than Virginia law and have briefed the matter against the criteria listed in *Safeguard Mutual Ins. Co. v. Williams*, 463 Pa. 567, 574, 345 A.2d 664, 668 (1975). Thus, we will consider the issue under Pennsylvania law thereby assuming, without deciding, that it is applicable. *See Petrella v. Kashlan*, 826 F.2d at 1344.[5]

Under *Safeguard*, 463 Pa. at 574, 345 A.2d at 668, the following conditions must exist before issue preclusion may be invoked:

(1) the issue decided in the prior adjudication was identical with the one presented in the later action;

(2) there was a final judgment on the merits;

(3) the party against whom the plea is asserted was a party or in privity with a party to the prior adjudication; and

(4) the party against whom it is asserted has had a full and fair opportunity to litigate the issue in question in a prior action.

The Shuders do not urge that the third condition set forth in *Safeguard* has not been met. Mrs. Shuder was a party in the Virginia action and Mr. Shuder is in privity

4. Of course, the Shuders do not contend that Mr. Shuder is not bound by the finding of contributory negligence. In any event, they stipulate that under Virginia law he could not assert a claim for loss of consortium. *See Floyd v. Miller*, 190 Va. 303, 57 S.E.2d 114 (1950). We recognize that the jury in the Pennsylvania action was informed of the consequence of an apportionment of negligence, apparently in a preliminary charge at the outset of the case. *See Peair v. Home Association of Enola Legion*, 287 Pa.Super. 400, 410, 430 A.2d 665, 670–71 (1981). Thus, it should have believed that by reason of its verdict the Shuders would recover. Nevertheless, we cannot treat the verdict on comparative negligence as suspect. We can hardly believe that a jury would return a finding that a plaintiff was negligent if it did not think that she was simply because it had been told that the finding would only reduce her recovery and not bar her entirely. Indeed, the Shuders themselves did not mention this point in their

brief and it only surfaced as the court raised it at oral argument. Overall, we have no doubt as to the integrity of the Pennsylvania verdict.

5. They are not necessarily correct in this. *See Gregory v. Chehi*, 843 F.2d 111, 116; *New Jersey–Philadelphia Presbytery v. New Jersey State Bd.*, 654 F.2d 868, 876 (3d Cir.1981). We observe that Virginia, unlike Pennsylvania, requires mutuality before collateral estoppel can be applied. *See House v. Kirby*, 233 Va. 197, 199, 355 S.E.2d 303, 305 (1987); *Greene v. Warrenton Production Credit Ass'n*, 223 Va. 462, 466–67, 291 S.E.2d 209, 212 (1982). Therefore, if we considered this case under Virginia law we would be obliged to determine whether McDonald's and McDonald's Virginia are in privity. Under Pennsylvania law mutuality is not required. Of course, the distinction may be immaterial as McDonald's asserts that McDonald's Virginia is its franchisee and wholly owned subsidiary.

with her. While McDonald's was not a party in Virginia, mutuality is not required Pennsylvania. *See In re Estate of Ellis,* 460 Pa. 281, 333 A.2d 728 (1975).

The Shuders do assert that the first, second and fourth conditions were not met, reasoning as follows. The Virginia action concerned McDonald's Virginia's duty to keep its premises safe. On the other hand, the issue here involves an allegation of faulty design and construction not raised in Virginia. Thus, the issues are different. Further, inasmuch as the Virginia verdict was general we cannot know what was decided by the jury. Accordingly, Mrs. Shuder may have been barred in Virginia by contributory negligence but that would not necessarily be a bar in Pennsylvania. Finally, the Shuders contend that the issues were different in the two states and thus they did not have a full and fair opportunity to litigate the Pennsylvania issues in the Virginia action.

It is undoubtedly true that if we applied Pennsylvania substantive law the action could not be barred by collateral estoppel or claim preclusion. As the Shuders correctly note, the Virginia verdict was general. Under the charge in Virginia Mrs. Shuder could have lost because she did not show that the property was in an unsafe condition or did not show that the condition was a proximate cause of her injuries. Alternatively, she could have lost because the jury found she was contributorily negligent. If the jury found that both she and McDonald's Virginia were negligent its finding, though barring her in Virginia, would have determined no issue fatal to the Shuders in Pennsylvania since Pennsylvania has a comparative negligence statute. Thus, collateral estoppel or issue preclusion could not be successfully asserted. *See C.B. Marchant Co. v. Eastern Foods, Inc.,* 756 F.2d 317, 319 (4th Cir.1985); *New Jersey–Philadelphia Presbytery v. New Jersey State Bd.,* 654 F.2d at 876. But Pennsylvania law does not apply to the substantive issues of this case.

In fact, an issue must have been decided in Virginia against Mrs. Shuder identical to an issue which had to have been found in her favor applying Virginia law in the Pennsylvania action if she was to recover against McDonald's. We know that the issues in Virginia were whether the premises were in a reasonably safe condition, whether Mrs. Shuder was guilty of contributory negligence and whether the breach of duty by McDonald's Virginia and the contributory negligence of Mrs. Shuder if established were proximate causes of the accident. While we cannot know which of these questions was answered adversely to Mrs. Shuder, necessarily one was, and under Virginia law a finding adverse to Mrs. Shuder on any of the bases on which the first verdict could have been predicated was fatal to the action against McDonald's.

While we are aware that the Shuders have attempted to demonstrate that the issues involved in the two cases were not identical since Mrs. Shuder charged that McDonald's Virginia failed to keep and maintain the premises in a safe condition and the Shuders asserted that McDonald's was negligent by reason of defects in the design and construction of the parking lot, the fact is that if the verdict in Virginia was based on a finding that McDonald's Virginia breached no duty to Mrs. Shuder then the jury necessarily found under the judge's charge that the lot was in a reasonably safe condition. This finding would bar the Shuders from making a claim that McDonald's was liable for design or construction defects which made the property unsafe. Indeed, the district judge in Pennsylvania in denying McDonald's motion for summary judgment came close to recognizing this as he suggested that collateral estoppel might apply if the Virginia jury had found that the parking lot was reasonably safe for ordinary use by business invitees. The artificiality of the distinction drawn by the Shuders of the duties owed by McDonald's and McDonald's Virginia is further demonstrated by the fact that the Pennsylvania district judge pointed out that the Shuders complained about the lighting. Inasmuch as the dispute between the parties on this issue involved whether the lights were on or off this was hardly a design issue. In this regard we observe that the Virginia action generated the same

dispute as was recognized by the United States Court of Appeals for the Fourth Circuit which pointed out that there was a sharp controversy over whether the parking lot was lighted.

Accordingly, while the Shuders argue that in the two states they advanced different allegations against the defendants, in both they attempted to recover for her injuries and sought to establish that the property was not in a safe condition for their use and in doing so they relied in part on the same evidence. Furthermore, McDonald's and McDonald's Virginia each owed her a duty of reasonable care with respect to their activities regarding the property. Thus, though the Shuders may have had two theories as to why the defendants failed in their duties to Mrs. Shuder the only issue regarding the property was its condition.

We recognize, of course, that the Virginia verdict may have been based on contributory negligence. But if so the Shuders are barred by that finding. Thus, in one way or another a finding barring the Pennsylvania action was made in Virginia and the first of the *Safeguard* criteria has been satisfied.

The other *Safeguard* criteria were met as well. Clearly, there was a final judgment on the merits in Virginia, and Mrs. Shuder had a full and fair opportunity to litigate the issues in that case. She does not argue that the Virginia proceedings denied her due process of law nor can she reasonably contend that she did not have an opportunity to establish the condition of the property in the Virginia case.

Thus, while we do not know which finding in the Virginia action estops the Shuders we know that one does. We emphasize that we, unlike the district judge, can reach this conclusion because we are applying Virginia rather than Pennsylvania law so that the Shuders cannot successfully contend that if the Virginia verdict was based on a finding that Mrs. Shuder was contributorily negligent she is nevertheless not necessarily barred in Pennsylvania. Accordingly, the motion for the judgment notwithstanding the verdict should have been granted on the basis of collateral estoppel or issue preclusion.

In reaching our result we have not overlooked the realities of this case. Mrs. Shuder brought two separate actions in two jurisdictions against two related entities for one accident. While in the Shuders' brief they assert that the second action was brought in Virginia only because "the statute of limitations [was] fast approaching" and they had not solved the McDonald's corporate structure, the fact remains that they could have brought one action in Virginia against both defendants. Further, they opposed McDonald's motion to transfer under 28 U.S.C. § 1404(a), which, if granted, would have permitted a consolidation and a single trial in Virginia. By their maneuvering the Shuders obtained two opportunities to make one recovery and, after failing in the first, they succeeded in the second. There was, of course, a cost to the court system in this as separate trials and separate appeals were generated. This sort of thing so contrary to a rational policy of attempting to have related matters resolved in a single proceeding, at least in an uncomplicated situation as that here, should not be encouraged, and in the circumstances of this case we see no reason to be grudging in fairly applying the bar of issue preclusion. Our result is consistent with the policy of using issue preclusion to reduce unnecessary litigation and to foster reliance on adjudication. *See Allen v. McCurry,* 449 U.S. 90, 95–96, 101 S.Ct. 411, 415, 66 L.Ed.2d 308 (1980).

The order of January 22, 1988 will be reversed and the matter will be remanded to the district court for entry of a judgment in favor of McDonald's notwithstanding the verdict dismissing this action.