**Kathleen RAMEY and Michael Ramey, h/w**

v.

**WAL–MART, INC.**

**Civil Action No. 96–3808.**

United States District Court, E.D. Pennsylvania.

June 26, 1997.

---

Michael Anthony De Fino, Law Offices of Michael Anthony De Fino, Philadelphia, PA, for Kathleen Ramey, Michael Ramey.

Richard L. Kremnick, Lisa A. Rosenblatt, Blank, Rome, Comisky & Mc Cauley, Philadelphia, PA, for Wal–Mart, Inc.

Richard L. Kremnick, Karen L. Green, Lisa A. Rosenblatt, Blank, Rome, Comisky & Mc Cauley, Philadelphia, PA, for Wal–Mart Stores, Inc.

*MEMORANDUM*

LOUIS H. POLLAK, District Judge.

This is a diversity case in which plaintiff Kathleen Ramey, who is a Pennsylvania resident, alleges that she slipped and fell at a store in New Jersey owned by defendant Wal–Mart, Inc. The issue before the court is whether Pennsylvania or New Jersey law governs this case. Plaintiff urges that New Jersey law is appropriate, while defendant argues that Pennsylvania law should govern. For the reasons stated below, I hold that New Jersey law should be applied in this case.

■ A federal court sitting in diversity must apply the choice of law rules of the forum state. *Klaxon v. Stentor Electric Manufacturing*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Pennsylvania has rejected the *lex loci delicti* rule under which the law of the state in which the accident occurred necessarily governs. *Griffith v. United Air Lines*, 416 Pa. 1, 203 A.2d 796, 805–06 (1964). In its place, Pennsylvania has created a rule that takes into account the nature of the conflict between the laws, the interests of the states in having their laws applied, and the significance of the contacts between the state and the controversy. *Id.; see also Shuder v. McDonald's Corp.*, 859 F.2d 266, 269–70 (3d Cir.1988); *Cipolla v. Shaposka*, 439 Pa. 563, 267 A.2d 854, 856 (1970).

■ Choice-of-law analysis in Pennsylvania is normally done in two stages. "First, the court must look to see whether a false conflict exists. Then, if there is no false conflict, the court determines which state has the greater interest in the application of its law." *LeJeune v. Bliss–Salem, Inc.*, 85 F.3d 1069 (3d Cir.1996) (citing *Cipolla*, 267 A.2d at 855). "[I]f only one jurisdiction's governmental interests would be impaired by the application of the other jurisdiction's law," then there is a "false conflict" and the law of the jurisdiction whose interests would otherwise be impaired governs. *Lacey v. Cessna Aircraft*, 932 F.2d 170, 187 (3d Cir.1991).

■ In the present case, there is some question as to whether there is any conflict

of substantive law—and therefore a possible conflict of governmental interests—at all. Both New Jersey and Pennsylvania largely follow the Restatement (Second) of Torts § 343 (1965). The case law of the two states in this area, however, has diverged on some important points, at least one of which could be relevant here.[1]

I need not decide at this point whether any such differences are pertinent in the present case. If there is no conflict, the choice of one jurisdiction's laws over the other's will not undermine the policies of either jurisdiction, nor will it affect the interests of either party. On the other hand, to the extent that they are distinguishable, if they are at all, they represent differences in the two states' policies regarding the allocation of responsibility for injuries. It appears, therefore, that if a policy of either state is affected, the corresponding policy of the other will be affected as well.[2] Hence, regardless of the extent of the conflict, it is appropriate to move to the second stage of the test and assess the relative importance of the interests of New Jersey and Pennsylvania in having their laws applied in this case.

■ Determining the significance of the state interests involved is done by assessing the "contacts each state has with the accident, the contacts being relevant only if they relate to the 'policies and interest underlying the particular issue before the court.'" *Cipolla*, 267 A.2d at 856 (quoting *Griffith*, 203 A.2d at 805). Additionally, "[t]he weight of a particular state's contacts must be measured on a qualitative rather than quantitative scale." *Id.*

■ Taking this approach, New Jersey has clearly had more significant contacts with the accident. While Pennsylvania has rejected strict adherence to *lex loci delicti*, this rejection cannot be read as discounting the

importance of the location of the accident. This contact remains especially important in cases in which the claim arises from "the use of and condition of property, traditionally matters of local control." *Shuder*, 859 F.2d at 272.

Defendant's contention that the location of this accident was "fortuitous" is unconvincing. Defendant's store was in New Jersey, and could be reasonably expected to fashion its conduct according to New Jersey negligence law. Additionally, plaintiff traveled to New Jersey in order to go to the store.

New Jersey certainly has an interest in the safety of the maintenance of property within its borders, as well as an interest in the safety of its visitors. Pennsylvania's only significant interest is in facilitating the ability of its citizens to recover damages. In these regards, this case parallels *Shuder* very closely, a Third Circuit decision to apply Virginia law in a case in which a Pennsylvania woman suffered an injury that she alleged was caused by a Virginia restaurant's failure to maintain its parking lot in a safe condition. 859 F.2d at 267.

For these reasons, it is hereby DETERMINED that the law of New Jersey governs this case.

---

1. New Jersey has adopted the "Mode of Operation Doctrine," according to which a plaintiff can be relieved of demonstrating the precise cause of an accident "where a substantial risk of injury is implicit in the manner in which a business is conducted, and on the total scene it is fairly probable that the operator is responsible either in creating the hazard or permitting it to arise or to continue." *Wollerman v. Grand Union Stores, Inc.*, 47 N.J. 426, 221 A.2d 513 (1966). Pennsylvania has declined to adopt the doctrine. *See Moultrey v. Great Atlantic & Pacific Tea Co.*, 281 Pa.Super. 525, 422 A.2d 593 (1980). The applicability of the doctrine to the facts of this case is disputed.

2. This will certainly be the case if the only relevant difference is the applicability of the Mode of Operation Doctrine. *See supra* note 1.