

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

10-31-2006

# Huber v. Taylor

Precedential or Non-Precedential: Precedential

Docket No. 05-1757

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation
"Huber v. Taylor" (2006). *2006 Decisions.* Paper 256.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/256

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 05-1757

———————

RONALD L. HUBER; WILLIAM J. AIRGOOD;
ANTHONY DEFABBO; JOHN DINIO;
ERNEST GISHNOCK; JOHN BIDLENSCIK;
HILMA MULLINS; WILLIAM DEEM,

Appellants

v.

ROBERT G. TAYLOR, II; ROBERT G. TAYLOR, II, P.C.;
CLETUS P. ERNSTER, III; GEORGE E. CIRE, JR.;
TAYLOR & CIRE; TAYLOR & ERNSTER PC;
ROBERT A. PRITCHARD;
CHRISTOPHER FITZGERALD;
LAW OFFICES OF ROBERT A. PRITCHARD;
PRITCHARD LAW FIRM, PLLC; JOSEPH B. COX, JR.;
JOSEPH B. COX, JR., LTD.; COX AND COX, L.L.P.;
R. G. TAYLOR, II, P.C.; J. ROBERT DAVIS, JR.;
TAYLOR, DAVIS & ERNSTER, P.C.

On Appeal from the United States District Court
for the Western District of Pennsylvania
District Court No. 02-cv-00304
District Judge:  Honorable Arthur J. Schwab

Argued on January 12, 2006

Before: SCIRICA*, <u>Chief Judge</u>, FUENTES and ROTH**,
<u>Circuit Judges</u>

(Opinion Filed October 31, 2006)

Samantha L. Southall, Esquire
Nicole Tuman, Esquire
Esther S. Trakinski, Esquire (ARGUED)
Cohen Pope
1633 Broadway
New York, NY   10019

Counsel for Appellants

*This case was argued before the panel of Judges Roth,
Fuentes, and Rosenn.  As Judge Rosenn passed away on
February 7, 2006, Chief Judge Scirica has been added to the
coram.

**Judge Roth assumed senior status on May 31, 2006.

Howard M. Klein, Esquire
Stephen R. Weaver, Esquire
Jeannette M. Brian, Esquire
Conrad, O'Brien, Gellman & Rohn
1515 Market Street, 16th Floor
Philadelphia, PA   19102-1916

      Counsel for Appellees Robert G. Taylor, II,
      Robert G. Taylor, II, P.C. and R. G. Taylor, II,
      P.C.

William M. Wycoff, Esquire
J. Alexander Hershey, Esquire
Thorp, Reed & Armstrong, LLP
301 Grant Street
One Oxford Centre, 14th Floor
Pittsburgh, PA    15219

      Counsel for Appellees Ernster, Cire and Davis

Kevin L. Colosimo, Esquire
Thorp, Reed & Armstrong, LLP
301 Grant Street
One Oxford Centre, 14th Floor
Pittsburgh, PA    15219

      Counsel for Appellees Pritchard, Fitzgerald,
      Law Offices of Robert A. Pritchard and
      Pritchard Law Firm, PLLC

Thomas C. DeLorenzo, Esquire (ARGUED)
Marshall, Dennehey, Warner, Coleman & Goggin
1845 Walnut Street, 16th Floor
Philadelphia, PA   19103

> Counsel for Appellees Joseph B. Cox, Jr. and
> Joseph B.Cox, Jr., Ltd.

Anita B. Weinstein, Esquire
Cozen O'Connor
1900 Market Street
Philadelphia, PA   19103-3508

> Counsel for Appellee Cox and Cox L.L.P.

---

OPINION

---

**ROTH**, <u>Cicuit Judge</u>:

This case presents the ironic scenario of class action plaintiffs' attorneys who are being sued for breach of fiduciary duty and related counts by a putative class that the attorneys themselves formed for asbestos personal injury litigation.  For the reasons stated below, we will vacate the District Court's grant of summary judgment to defendant attorneys and its denial of class certification, and remand this case for further proceedings consistent with this opinion.

4

## I. Background and Jurisdiction

Our case begins in Jefferson County, Mississippi, where an asbestos personal injury case, captioned <u>Cosey v. E.D. Bullard Co.</u>, No. 95-00069 (Miss. Cir. Ct. Jefferson Cty.), was commenced in 1995. Mississippi law does not provide for class actions, but it has liberal joinder rules and a reputation as a plaintiff-friendly jurisdiction. Accordingly, over the next four years, several thousand asbestos personal injury plaintiffs were joined in <u>Cosey</u>, along with more than two hundred defendants. In 1998, a trial was conducted in <u>Cosey</u> for the cases of twelve plaintiffs with malignant asbestos-related diseases. Those twelve <u>Cosey</u> plaintiffs were awarded approximately $48.5 million in damages. The sole attorneys of record for all the <u>Cosey</u> plaintiffs were Robert A. Pritchard and Christopher Fitzgerald.

At the time the <u>Cosey</u> verdict was delivered, there were more than 2,000 other asbestos cases pending in Jefferson County. The large award in <u>Cosey</u> prompted many companies with potential asbestos liability to explore settlements. In May 1999, before any settlements were reached, Pritchard brought a second asbestos personal injury mass action in Mississippi state court, <u>Rankin v. A-Bex Corp.</u>, No. 99-00086 (Miss. Cir. Ct. Jefferson Cty.),[1] in which the Plaintiffs in this suit were joined.

The Plaintiffs, Roland L. Huber, William J. Airgood,

---

[1] In December 1999, <u>Rankin</u> was removed to the federal District Court for the Southern District of Mississippi as <u>Rankin v. A-Bex Corp.</u>, 1:99-cv-00558-WJG.

Anthony Defabbo, John Dinio, Ernest Gishnock, John Bidlencsik,[2] Hilma Mullins, and William Deem, are former steelworkers from Pennsylvania, Ohio, and Indiana. All eight Plaintiffs were exposed to asbestos at some point in their careers. None have developed malignant asbestos-related disease. All the Plaintiffs except Huber are or were smokers. Plaintiffs, along with 2,637 other asbestos-exposed individuals from Pennsylvania, Ohio, and Indiana (collectively the Northerners) retained counsel in their home states (Local Counsel) to prosecute their asbestos claims for a 40% retainer fee.

Local Counsel had previously entered into co-counsel agreements with Robert G. Taylor II, a Texas attorney involved in Cosey.[3] Taylor had his own client base in Texas but was looking to expand his asbestos client "inventory." Taylor contracted with Local Counsel to serve as co-counsel for any future asbestos plaintiffs that Local Counsel would represent in exchange for Taylor receiving between 95% and 97.5% of Local Counsel's fees if suit were brought outside of Local Counsel's home state, and a smaller amount if suit were brought in the home state. The agreements between Taylor and Local Counsel

---

[2] We note that there is inconsistency between the case caption and the documentary record as to the spelling of Mr. Bidlencsik's name. In the case caption it appears at "Bidlenscik," probably as a result of unfamiliarity with Slovak names.

[3] Taylor was practicing law as Robert G. Taylor II, P.C. His firm employed defendant Cletus P. Ernster III.

provided that, if the asbestos suits were filed in a state other than Local Counsel's home state, Texas law would govern the contingent fee contract.

Taylor's fee arrangement is key for understanding Plaintiffs' case. First, it meant that employment as Local Counsel could only be profitable as volume, rote work because Local Counsel would keep only one to two percent of any client's recovery. Local Counsel had little incentive to focus on any particular case. Since many recoveries were in the range of a few thousand dollars, Local Counsel collected very little from any particular representation. Second, the fee arrangement meant that, all things being equal, co-counsel representations were less profitable to Taylor than representations of direct clients because of the fee-splitting involved. Third, the arrangement meant that the one to two percent Local Counsel cut, when aggregated among all Local Counsel, as it was from Taylor's perspective, represented a sizeable amount given the hundreds of millions of dollars of recoveries.

Taylor himself had entered into upstream co-counsel agreements with Fitzgerald and Pritchard, who in turn entered into an upstream co-counsel agreement with Joseph B. Cox, Jr.,[4] to negotiate settlements, for which Cox would receive four percent of all gross settlements. Plaintiffs allege that they were never informed of the various co-counsel arrangements.

---

[4] Cox was doing business as Joseph B. Cox Jr., P.C. and as Cox & Cox, LLP. We refer to Taylor, Ernster, Pritchard, Fitzgerald, Cox, and their respective firms collectively as "Defendants."

Cox negotiated settlements with asbestos defendants W.R. Grace, Owens Corning, Fiberboard, and the Center for Claims Resolution (CCR), an organization created by 19 asbestos defendants to settle asbestos claims. Under the terms of all the settlements, the payout varied both by level of injury and by the home state of the claimants. In all the settlements negotiated by Cox, Northerners received payouts that were between 2.5 and 18 times lower than those received by plaintiffs from Mississippi and Texas (Southerners). Northerners, who joined in the Mississippi actions nonetheless received a larger settlement than similar asbestos plaintiffs from Pennsylvania, Ohio, and Indiana usually receive in their home state courts.[5]

Defendants, in settling these cases for Southerners, did not have to share their fees with Local Counsel, as they had to do with Northerners. Plaintiffs allege that the difference in the settlement payouts to Northerners is attributable to this incentive of Defendants to allocate a greater percentage of aggregate settlements to Southerners in order to minimize Local Counsel's percentages. This marginal percentage difference becomes significant in light of the scale of the settlements. The record contains the approximate or maximum values of eleven of the

---

[5] We note, however, that there was an incentive for Defendants not to bring suit in Pennsylvania, Ohio, and Indiana. If suit was brought in the home state of a Local Counsel, Defendants received a smaller percentage of Local Counsels' fees, 90% for Pennsylvania and 80% for Ohio and Indiana, as opposed to 97.5% for Pennsylvania and 95% for Ohio and Indiana if suit were brought outside of Local Counsels' home state.

8

nineteen settlement agreements negotiated by Defendants.[6] We calculate these eleven settlement agreements to total some $400 million. Therefore, on just this portion of the total settlements, Defendants stood to gain up to $10 million (2.5% of $400 million) at the expense of Northerners (and Local Counsel), depending on how the settlements were allocated between Northerners and Southerners.

Defendants reply to this allegation by asserting that the settlements were not aggregate settlements that they then allocated as they saw fit. Instead, Defendants claim that the plaintiffs in the settled cases were presented with offers that varied for different individuals based on factors such as the type of injury or asbestos exposure, lifestyle habits like smoking, and geographic origin. Defendants claim that geographic origin is an appropriate factor in determining settlement value because jury verdicts in northern states are traditionally lower than in southern states and because, in southern courts, jury verdicts for Northerners are typically lower than for Southerners in their home state. For the purposes of this appeal, we need not resolve whether these settlements were aggregated, but we note that there is language in some of the settlement agreements that

---

[6] These eleven settlements are American Optical, CCR, Combustion Engineering, Flintkote, Halliburton, Ingersoll-Rand, Kaiser, Met Life Insurance, Owens-Illinois, Owens-Corning and Fiberboard, and Uniroyal. The record did not permit us to calculate the settlement values in the agreements with 3M, Babcock & Wilson, Garlock, W.R. Grace & Co.-Conn., Georgia Pacific, Harbison-Walker, LAQ, and Westinghouse.

strongly supports the contention that they were aggregate settlements.[7] Moreover, the very documents Defendants cite in their brief refer to the settlements as aggregate.[8]

---

[7] See JA507 (American Optical settlement) ("AO agreed to pay a total of" $34.25 million and "Met life agreed to pay a total of" $20 million "in full and final settlement of all claims of the Pritchard Plaintiffs"); JA528 (CCR settlement) (estimating CCR's potential funding obligation); JA630 (Combustion Engineering settlement) ("In payment of 6,982 Taylor and/or Pritchard claims, CE agrees to pay $22,438,563.00, allowing substitutes for disqualified cases."); JA810 (Kaiser settlement) ("KACC agrees to settle the claims of all Present Claimants by paying to Plaintiffs' Counsel in trust for all the Present Claimants a total not to exceed" $20.5 million); JA837 (Met LifeInsurance settlement) ("The maximum funds paid pursuant to this Agreement shall not exceed" $13.82 million); JA852 (Owens-Illinois settlement) (". . . in no event shall Owens-Illinois pay more than" $3 million); JA914 (Uniroyal settlement) ("In no event shall Uniroyal pay more than a total of $150,000 in settlement of all such Ohio, Indiana, and Pennsylvania cases." ).

[8] Acknowledgment for Full Release/Non-Malignant-Pennsylvania, Signed by John Dinio (". . . these settlements were part of an aggregate settlement . . ."); Letter of March 31, 2000 from Local Counsel Aimee Manuel to Ernest Gishnock, (". . . these may be considered aggregated settlements . . ."); and Letter of May 14, 2001 from Robert G. Taylor II to William Deem (". . . you have authorized settlement negotiations of your claims in the aggregated.").

10

After each of the settlement agreements was negotiated, the Northerners received various disclosures. These disclosures were made by Local Counsel and by Parapro Enterprises, Inc., a paralegal service associated with Taylor. The Northerners were presented with a release, a check, and a disbursement sheet. The release was explained orally to Northerners by Parapro paralegals. The disclosures did not reveal the settlements' material terms or the nature of Defendants' involvement in the cases. The written disclosures stated that further information about the settlements was available on request. The record does not state whether any of the Plaintiffs sought to avail themselves of this information.[9] Plaintiffs have introduced evidence that neither the Parapro paralegals nor Local Counsel were themselves aware of the full terms of the settlements or even had access to the complete settlement agreements.

The Plaintiffs brought suit in the Western District of Pennsylvania on behalf of a putative class of Northerners. Plaintiffs have not sued their Local Counsel or Parapro. Plaintiffs alleged several counts, including breach of fiduciary duty, aiding and abetting breach of fiduciary duty, and conspiracy to breach fiduciary duty. Specifically, Plaintiffs have alleged that Defendants breached their fiduciary duties of undivided loyalty and candor. Plaintiffs allege that Defendants owed them a fiduciary duty as their counsel; that Defendants

[9] An internal Parapro memorandum indicates that Plaintiff Bidlencsik had asked whether plaintiffs in "other states" were getting more than those from Ohio to which the Parapro representative responded that she did not know.

11

engaged in an undisclosed, multiple representation; that Defendants had a conflict of interest regarding their multiple representation because of the fee arrangements that gave Defendants a larger percentage of Southerners' recoveries than of Northerners' and that this created an incentive for Defendants to negotiate settlements that paid more for Southerners' claims than for Northerners'; and that Defendants never gave proper disclosure of this conflict of interest or of the full terms of the settlement offers.

The District Court denied Plaintiffs' class certification motion for four reasons. First, the District Court found that individual questions about disclosures, reliance, causation, damages, and choice of law predominated over issues common to the class, so the motion for class certification failed to meet the requirements of FED. R. CIV. P. 23(b). Second, the District Court also concluded that, because of the predominance of individual questions, a class action was not the most efficient way to litigate the matter. Third, the District Court denied class certification on the ground that the Plaintiffs were not typical of the putative class of Northerners because six of the eight Plaintiffs had not qualified for the CCR settlement offer. Finally, the District Court held that the Plaintiffs were inadequate class representatives because their interests were no longer aligned with other Northerners due to the fact that they were no longer represented by Defendants in asbestos litigation, unlike other Northerners, and that this would create a conflict of interests between them and the putative class.

The parties cross-moved for summary judgment. The District Court denied Plaintiffs' motion and granted Defendants'

12

motion because it found that Plaintiffs had failed to present evidence of actual harm or evidence that Defendants' non-disclosures were the proximate cause of their harm, both required elements in all of Plaintiffs' claims. The District Court defined the actual harm requirement as a showing of any evidence that "'but for' defendant attorneys' conduct, [Plaintiffs] could or would have received more favorable offers." The District Court noted that there was record evidence from representatives of the asbestos defendants that "even though Pennsylvania, Ohio, and Indiana plaintiffs undoubtedly received less money than the Mississippi plaintiffs, they still received higher settlement offers than those normally paid to asbestos claimants from those states because of the leverage these northern claimants gained from being joined with the Mississippi claimants in a Mississippi court." The District Court also noted that Plaintiffs' claims that they would have received higher settlements were only speculation, as "Plaintiffs have adduced no evidence that they would have obtained more favorable offers from any of the other asbestos defendants with whom they settled their claims." Finally, the District Court found that plaintiffs have failed to present evidence from which a reasonable person could conclude that defendants['] alleged non-disclosures proximately caused any plaintiff to accept settlements they would not have otherwise accepted. Rather, the evidence shows that plaintiffs either were given or had direct access to such information but chose to remain unaware, and at best did not recall basic facts surrounding when, where and if they read the documentation presented to them explaining the settlement.

Plaintiffs have appealed both the denial of class

certification and summary judgment in respect to three claims: breach of fiduciary duty, aiding and abetting a breach of fiduciary duty, and civil conspiracy to breach of fiduciary duty. Plaintiffs have not appealed from the grant of summary judgment to Defendants on claims of fraud, conspiracy to defraud and convert, legal malpractice, conversion, and violation of deceptive trade practices laws.

The District Court had subject matter jurisdiction under 28 U.S.C. § 1332. We have jurisdiction under 28 U.S.C. § 1291. We undertake a plenary review of grants of summary judgment. Gottshall v. Consol. Rail Corp., 56 F.3d 530, 533 (3d Cir. 1995). Summary judgment is only appropriate if there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). In reviewing the District Court's grant of summary judgment, we view the facts in a light most favorable to the non-moving party. Gottshall, 56 F.3d at 533.

## II. Discussion

### A. Choice of Law

The lynchpin of the District Court's decisions on class certification and summary judgment was its determination that all of Plaintiffs' causes of action required a showing of causation and actual injury. The District Court noted that the putative class had individualized injuries, which impeded class certification, while the individual Plaintiffs had not shown any

14

personal injury, thereby defeating their action. We agree with the District Court that, if Plaintiffs must show causation and actual injury, they lose on both parts of their appeal. We disagree with the District Court, however, as to whether the relevant law requires a showing of causation and actual injury.

The District Court's determination that actual injury was required in all of Plaintiffs' causes of action was not based on an analysis of any particular state's laws, even though this is a diversity action. In a diversity action, the court "must apply the choice of law rules of the forum state to determine what substantive law will govern." Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941). This action was commenced in the United States District Court for the Western District of Pennsylvania, so the District Court properly turned to Pennsylvania's choice of law rules.

Before a choice of law question arises, there must first be a true conflict between the potentially applicable bodies of law. On Air Entm't Corp. v. Nat'l Indem. Co., 210 F.3d 146, 149 (3d Cir. 2000). If there is no conflict, then the district court sitting in diversity may refer interchangeably to the laws of the states whose laws potentially apply. Id. If there is a conflict between the potentially applicable laws, then Pennsylvania uses the "significant relationship" test of the Restatement (Second) of Conflicts of Laws. Griffith v. United Air Lines, Inc., 203 A.2d 796, 801-06 (Pa. 1964); Troxel v. A.I. duPont Inst., 636 A.2d 1179, 1180-81 (Pa. Super. 1994).

In this case, the District Court determined that there was no conflict of laws between Ohio, Indiana, and Pennsylvania as

15

to the requirement of harm and thus stated that under Pennsylvania's choice of law rules it did not need to determine which law applied. The District Court did not, however, give any consideration to Texas law.[10]

Plaintiffs did not object to the District Court's choice of law ruling either at trial or in their original appellate briefs. Plaintiffs contended, however, that the District Court erred in requiring causation (including reliance) and actual injury as elements of their breach of fiduciary duty claims. In support of this contention, Plaintiffs cited cases from Texas and other jurisdictions.

To resolve the confusion about whether actual injury is required for a breach of fiduciary duty claim, we requested letter memoranda from the parties. The letter memoranda addressed the questions of fiduciary duty, what jurisdiction's law governed the fiduciary duty at issue here, and whether the law of that jurisdiction or jurisdictions required a showing of actual injury to sustain an action for breach of fiduciary duty.

---

[10] We are puzzled by this failure to consider Texas law since one of Plaintiffs' claims, not a part of this appeal, was for violation of the deceptive trade practices laws of Texas, Ohio, Pennsylvania, and Indiana, and Attachment I to Plaintiffs' Supplemental Brief in support of their motion to the District Court for class certification was entitled "Elements of Plaintiffs' Causes of Action Under Texas Law." Moreover, Plaintiffs agreements with Local Counsel provide that the agreements "shall be enforced and interpreted pursuant to the laws of Texas."

16

### 1. Plaintiffs Did Not Waive the Choice of Law Issue

Defendants contend that the District Court correctly decided the choice of law question and that Plaintiffs have waived the issue in any case. Generally, failure to raise an issue in the District Court results in its waiver on appeal. Bagot v. Ashcroft, 398 F.3d 252, 256 (3d Cir. 2005). There are exceptions to this rule, however. First, there are certain issues, such as subject matter jurisdiction, which cannot be waived. E.g., United States v. Cotton, 535 U.S. 625, 630 (2002). Second, even if an issue was not raised, "[t]his Court has discretionary power to address issues that have been waived." Bagot, 398 F.3d at 256. Indeed, we have been reluctant to apply the waiver doctrine when only an issue of law is raised. See, e.g., id.; In re Am. Biomaterials Corp., 954 F.2d 919, 928 (3d Cir. 1992). "This court may consider a pure question of law even if not raised below where refusal to reach the issue would result in a miscarriage of justice or where the issue's resolution is of public importance." Loretangeli v. Critelli, 853 F.2d 186, 189-90 n.5 (3d Cir. 1988).

When considering waiver issues, we are also always mindful of the prophylactic and prudential origins of the doctrine. As the Supreme Court noted in Hormel v. Helvering, the waiver doctrine is

> essential in order that parties may have the opportunity to offer all the evidence they believe relevant to the issues . . . [and] in order that litigants may not be surprised on appeal by final decision there of issues upon which they have had no opportunity to introduce

17

> evidence.

312 U.S. 552, 556 (1941). The corollary of <u>Hormel</u> is that we are less inclined to find a waiver when the parties have had the opportunity to offer all the relevant evidence and when they are not surprised by issues on appeal.

In this case, we do not believe that Plaintiffs waived the choice of law issue. We conclude instead that the District Court, in determining that "Defendant attorneys assert, and plaintiffs do not disagree that, for purposes of this summary judgment motion, no true conflict of laws exists," overlooked the fact that, while the parties agreed that there was no true conflict of laws, they disagreed as to what law should apply.[11] The issue of which state's law to apply is inherent in the parties' positions throughout this case. Defendants claim that the law in all the relevant jurisdictions requires a showing of actual harm for breach of fiduciary duties, while Plaintiffs assert that it does not when the remedy sought is disgorgement, citing to Texas law.

---

[11] <u>See,</u> <u>e.g.</u>, Appellants' Brief at 39 n.11 (citing Model Rule of Professional Conduct in text and then citing Mississippi, Texas, Pennsylvania, Indiana, and Ohio rules of professional conduct in footnote as in accord); Appellants' Brief at 40 n.12 (same). <u>See also</u> Attachment I to Plaintiffs' Supplemental Brief in Support of Their Motion for Class Certification, "Elements of Plaintiffs' Causes of Action Under Texas Law," filed before the District Court on March 2, 2004, included in II Joint Appendix 474.

Moreover, even if choice of law issues are waiveable,[12] and Plaintiffs failed to raise the issue before the District Court and on appeal, the exceptions to the waiver doctrine would apply here. Plaintiffs' repeated and insistent citation to Texas law as providing the governing standard alerted this Court to the choice of law issue. Because of our concern about this issue, prior to oral argument we requested letter memoranda on it from all parties and at oral argument the issue was discussed by them. Thus, the issue has been fully developed on appeal, and Defendants have not suffered any unfair surprise or disadvantage from our concern that we decide the case under the correct law. Defendants would not have argued their case differently if Plaintiffs had explicitly raised the issue on appeal. Indeed, Defendants themselves cited Texas cases at several

_____

[12] We have not adopted a consistent rule regarding whether choice of law issues are waiveable. In Parkway Baking Co., Inc. v. Freihofer Baking Co., 255 F.2d 641, 646 (3d Cir. 1958) and United States v. Certain Parcels of Land, 144 F.2d 626 (3d Cir. 1944) we held that choice of law questions cannot be waived. As we noted in Certain Parcels, "The appropriate law must be applied in each case and upon a failure to do so appellate courts should remand the cause to the trial court to afford it opportunity to apply the appropriate law, even if the question was not raised in the court below." Id. at 630. In Neely v. Club Med Mgmt. Servs., 63 F.3d 166, 180 n.10 (3d Cir. 1995) (en banc), however, we considered the choice of law question waived. Neely, however, did not specifically overrule Parkway Baking or even address that case. We need not resolve the tension between Neely and Parkway because we do not believe that Plaintiffs waived the choice of law issue.

19

points in their appellate brief for the point that Plaintiffs have misinterpreted Texas law, rather than arguing that Texas law is inapplicable. Moreover, the Plaintiffs' clearly raised the issue in the District Court as evinced by their Supplemental Brief to the District Court in support of their motion for class certification, which included a five-page attachment entitled "Elements of Plaintiffs' Causes of Action Under Texas Law." This Supplemental Brief was included on Appeal in Volume II of the Joint Appendix. Accordingly, even if the issue were to be considered waived, it still would be appropriate for us to consider it.

Turning to the conflict of law issue, it is necessary to examine the law of *all* the relevant jurisdictions. The District Court only discussed Pennsylvania, Ohio, and Indiana law in its choice of law discussion. It did not consider Texas law, even though Plaintiffs routinely cite Texas caselaw and Texas Disciplinary Rules of Professional Conduct in their briefs, the record includes the document entitled "Elements of Plaintiffs' Causes of Action Under Texas Law," one of Plaintiffs' original causes of action (which has not been appealed) was for breach of Texas deceptive trade practices law, and Plaintiffs' contracts with Local Counsel state that they are to be enforced and interpreted according to Texas law. Therefore, the most that we can read from the District Court's opinion is that Plaintiffs agreed that there was no conflict among the laws of Pennsylvania, Ohio, and Indiana, not what Plaintiffs believed the law in those states to be, much less whether Plaintiffs believed that the law of those states conflicted with Texas law or which state's law should govern.

20

Such a reading is consistent with the substance of the parties' arguments. Plaintiffs claim that Texas law should govern and that Texas does not require a showing of actual harm for a court to order disgorgement, rather than compensatory damages, as a remedy for breach of fiduciary duty. Plaintiffs also contend that, even if Pennsylvania, Ohio, or Indiana law applies, those states have never addressed the particular scenario of a suit seeking disgorgement rather than compensatory damages for a breach of fiduciary duty, but that every other jurisdiction that has addressed the issue has followed the Texas rule. The Defendants, in contrast, claim that the law in all the relevant jurisdictions requires a showing of actual harm.

In view of these positions, our first task is to ascertain what jurisdiction's law applies. Following Pennsylvania choice of law analysis, we must determine if there is a conflict that necessitates selection of a jurisdiction's law.

### 2. There are Multiple Conflicts of Laws

Plaintiffs contend that Texas law governs the fiduciary duties. Defendants, on the other hand, assert that, if there is a true conflict, Pennsylvania, Ohio, and Indiana law applies. Thus, the first question in a Pennsylvania choice of law analysis is whether there is a true conflict between Texas, Pennsylvania, Ohio, and Indiana law.

The true conflict question is complicated by the fact that some states differentiate actions for breach of fiduciary duty by

21

an attorney from legal malpractice and from violation of state disciplinary rules, while other states equate two or all three causes of action. There is undoubtedly substantial overlap among the three, and state courts have not always been precise in their language when discussing these matters. Nonetheless, there is a conflict of law on each of Plaintiffs' claims, although the conflict and the result it causes varies from claim to claim.

### a. Breach of Fiduciary Duty

Under Texas law, "a client need not prove actual damages in order to obtain forfeiture of an attorney's fee for the attorney's breach of fiduciary duty to the client." Burrow v. Arce, 997 S.W.2d 229, 240 (Tex. 1999). Also Yaquinto v. Sergerstrom, (In re Segerstrom, 247 F.3d 218, 226 n.5 (5th Cir. 2001). The Texas rule accords with the rule adopted in several other states, the Restatement (Second) of Trusts § 243, the Restatement (Second) of Agency § 469, and the Restatement (Third) of the Law Governing Lawyers, §§ 37, 55. It also comports with the two circuit level decisions on the issue, Hendry v. Pelland, 73 F.3d 397 (D.C. Cir. 1996) (applying D.C. law), Frank v. Bloom, 634 F.2d 1245, 1257-58 (10th Cir. 1980) (applying Kansas law).

Defendants argue that Texas law does require actual damages for a breach of fiduciary duty claim. This is incorrect. Texas requires actual damages only if a plaintiff seeks to recover damages for actual harm. Liberty Mut. Ins. Co. v. Gardere & Wynne L.L.P., 82 Fed. Appx. 116, 118 (5th Cir. 2003) (under Texas law "[n]ot all forms of recovery require a client who is suing his attorney to prove that the attorney's

22

actions caused the client injury . . ..”); <u>Two Thirty Nine Joint Venture v. Joe</u>, 60 S.W.3d 896, 910 (Tex. App. 2001), <u>rev'd on other grounds</u>, 145 S.W.3d 150 (“*Generally*, the proper measure of damages in a legal malpractice case is that amount of damages that would have been collectible but for the wrongful act or omission of the attorney.”) (emphasis added).  Thus, in <u>Joe v. Two Thirty Nine Joint Venture</u>, 145 S.W.3d 150, 159 (Tex. 2004), the Texas Supreme Court required causation and an injury for a legal malpractice claim based, *inter alia*, on an alleged breach of fiduciary duty.  When only fee forfeiture is at issue, actual harm need not be proven because “[i]t is the agent's disloyalty, not any resulting harm, that violates the fiduciary relationship and thus impairs the basis for compensation.  An agent's compensation is not only for specific results but also for loyalty.”  <u>Burrow</u>, 997 S.W.2d at 238.

At first blush, Pennsylvania, Indiana, and Ohio law seem to indicate that claims for  breach of fiduciary duty require actual harm.  <u>Mullen v. Cogdell</u>, 643 N.E.2d 390, 401 (Ind. App. 1994); <u>McConnell v. Hunt Sports Enter.</u>, 725 N.E.2d 1193, 1215 (Ohio App. 1999); Pa. S.S.J. I.[13] § 4.15 (1991).[14]  Whether these states would require a showing of actual harm in a situation in

---

[13] Suggested Sample Jury Instructions.

[14] Troublingly, the decisions cited by the District Court for the proposition that the Plaintiffs must show actual injury, <u>Kituskie v. Corbman</u>, 714 A.2d 1027, 1030 (Pa. 1998) and <u>Gilman v. Hohman</u>, 725 N.E.2d 425, 428-29 (Ind. App. 2000), are legal malpractice cases, a form of negligence actions, rather than fiduciary breach actions.

23

which only disgorgement is requested is, however, an open question. The issue has never been resolved by these states' courts. Arguably, they might adopt the well-considered position of every jurisdiction that has considered the issue, which is to require harm only for damages, not for the equitable remedy of disgorgement.

Plaintiffs are currently seeking "disgorgement of Defendants' legal fees collected with respect to the Cosey and Raken actions, as well as compensatory and punitive damages."[15] Thus, there is not a direct conflict of laws between Texas and Pennsylvania, Ohio, and Indiana, but there is a potential conflict of laws. We have found no authority as to how to treat such a hypothetical conflict of laws, but we will treat it as if there were an actual conflict.

The end result is the same, however, whether or not there is a conflict. If Pennsylvania, Ohio, and Indiana should follow Texas law, there would not be a requirement of a showing of actual harm in order to maintain an action for disgorgement for breach of fiduciary duty. On the other hand, if Pennsylvania, Ohio, and Indiana did not follow the Texas rule, there would be a conflict, but, as analyzed below in Section II.A.3, we conclude that Texas law would apply under the Pennsylvania choice of law rules' "significant relationship"

_____

[15]In this case, disgorgement would likely result in a larger recovery for Plaintiffs than compensatory damages. Disgorgement could entail up to 39% of their total recovery (Taylor's 97.5% of the 40% contingent fee to Local Counsel), whereas compensatory damages could be *de minimis*.

24

analysis.[16]   Either way, the same rule applies—no showing of actual harm is required to maintain an action for disgorgement for breach of fiduciary duty.  Thus, even if there is a conflict here, it does not affect the outcome.

### b.  Civil Conspiracy to Breach Fiduciary Duties

There might be a conflict of laws regarding the element necessary to prove a civil conspiracy for breach of fiduciary duties.  In large part, this conflict depends on how one believes a Texas court would apply Texas civil conspiracy law to Texas's limited requirements for breach of fiduciary duty when disgorgement is sought.

Texas requires both a conspiracy and a breach of fiduciary duty to maintain a claim of civil conspiracy to breach fiduciary duties.  Finish Line P'ship. v. Kasmir & Krage, L.L.P., 2000 Tex. App. LEXIS 7744 (Tex. App. 2000).  Therefore, Plaintiffs cannot proceed on their civil conspiracy claim under Texas law unless they can also proceed on their breach of fiduciary duty claim, as discussed above.

---

[16] We note that under Pennsylvania choice of law rules' "significant relationship" analysis, among Pennsylvania, Ohio, and Indiana, there is not a state with a superior relationship to this case.  Therefore, if Texas law did not apply, we would still have to determine if there was a conflict among these states' laws and that seeking certification from three separate state supreme courts, including two that are not within our Circuit, could significantly delay resolution of this case.

Texas generally requires actual injury for civil conspiracy claims, <u>Chon Tri v. J.T.T.</u>, 162 S.W.3d 552, 556 (Tex. 2005). However, in light of the absence of an injury requirement for breach of fiduciary duty and Texas' definition of civil conspiracy as "a combination by two or more persons to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means," <u>Triplex Commc'ns v. Riley</u>, 900 S.W.2d 716, 720 (Tex. 1995), we think it an open question whether Texas law requires actual harm for a claim of civil conspiracy to breach fiduciary duty.

Pennsylvania law appears to require injury for a civil conspiracy. <u>Goldstein v. Phillip Morris, Inc.</u>, 854 A.2d 585, 590 (Pa. Super. Ct. 2004) (listing injury as a necessary element), <u>but cf.</u> <u>Grose v. P&G Paper Prods. (In re Grose)</u>, 866 A.2d 437, 440-441 (Pa. Super. Ct. 2005) (not listing injury as a necessary element although injury existed). Ohio requires proof of an underlying claim and actual damages in a claim for civil conspiracy. <u>Williams v. Aetna Fin. Co.</u>, 700 N.E.2d 859, 868 (Ohio 1998). Indiana also requires harm for a civil conspiracy. <u>Indianapolis Horse Patrol, Inc. v. Ward</u>, 247 Ind. 519, 522 (Ind. 1966); <u>Winkler v. V.G. Reed & Sons</u>, 638 N.E.2d 1228, 1234 (Ind. 1994). As noted above, though, these states have not addressed the unique situation of a claim for disgorgement for breach of fiduciary duties. This is an area of unsettled law, but we believe it a fair presumption that civil conspiracy to breach fiduciary duties will follow the law for breach of fiduciary duties, so, as explained above, we will presume a conflict of laws on the civil conspiracy claim too.

### c. Aiding and Abetting Breach of Fiduciary Duties

26

Proof of a breach of fiduciary duty is required to maintain a claim of aiding and abetting a breach of fiduciary duty. Toles v. Toles, 113 S.W.3d 899, 917 (Tex. App. 2003); Kline v. O'Quinn, 874 S.W.2d 776, 786-87 (Tex. App.1994); State v. Galloway, 2005 Ohio App. LEXIS 4861, **9 (Ohio Ct. App. 2005); Williams v. Aetna Fin. Co., 700 N.E.2d 859, 868 (Ohio 1998); State Bd. of Med. Educ. & Licensure v. Ferry, 94 A.2d 121, 123 (Pa. Super. Ct. 1953). Indiana does not appear to recognize civil aiding and abetting; that term is used only in Indiana criminal law. Comm'r v. RLG, Inc., 755 N.E.2d 556, 560-561 (Ind. 2001).

States vary on whether damages are required for such a claim. Pennsylvania appears not to have such a requirement. Thompson v. Glenmede Trust Co., 1993 WL 197031 (E.D. Pa. 1993) (aiding and abetting a breach of fiduciary duty does not require actual harm); but see Koken v. Steinberg, 825 A.2d 723, 732 (Pa. Commw. Ct. 2003) (hesitantly adopting Thompson). Similarly, Texas only requires an underlying breach of fiduciary duty, Toles, 113 S.W.3d at 917, which does not require actual injury. Burrow, 997 S.W.2d at 240. Ohio, however, appears to require an injury. Williams, 700 N.E.2d at 868 (approving of the discussion in Halberstam v. Welch, 705 F.2d 472 (D.C. Cir. 1983) (injury required for aiding and abetting claim). Accordingly, there is a true conflict of laws between Texas and

Pennsylvania on the one hand and Ohio (and Indiana) on the other as to aiding and abetting a breach of fiduciary duty.

### 3. Under What Law Were the Fiduciary Duties Created?

27

Since, as we have noted, there is a conflict of laws, Pennsylvania law requires us to undertake a "significant relationship" analysis to determine which jurisdiction's law applies. Of the relevant jurisdictions, Texas has by far the most significant relationship with the action. The legal representation of the Plaintiffs (and class members) was conceived of in Texas, solicited from Texas, and primarily controlled by lawyers licensed to practice in Texas. Taylor and Cox are licensed to practice law in Texas, and Texas is the primary locale of their practices. None of the Defendants are licensed to practice law in Ohio, Indiana, and Pennsylvania. As Defendants could not be subject to disciplinary action in those states, it would be odd to then subject them to related fiduciary duties in those jurisdictions when there is another jurisdiction with more significant interests in the matter.

Taylor sought to broaden his asbestos "inventory" by hiring lawyers in Ohio, Indiana, and Pennsylvania to recruit class members and serve as local counsel. Taylor served as lead counsel for all of the Northerners' asbestos claims, handled the negotiation of the settlements in question, held himself out as their counsel, and received 95% of their contingent fees. Most of the communication with the Northerners was via Parapro, a Texas corporation headquartered in Houston, Texas, and Taylor's contract with Parapro provided that Texas law would govern that relationship.

The Texas Supreme Court has expressed its concern about the potential conflicted duty of loyalty when class action lawyers negotiate settlements without judicial oversight. Gen. Motors Corp. v. Bloyed, 916 S.W.2d 949, 954 (Tex. 1996).

28

This is in marked contrast to Mississippi. Mississippi courts do not oversee settlements of class actions because that state does not recognize such actions. USF&G Ins. Co. v. Walls, 911 So. 2d 463, 467 (Miss. 2005). Thus, the Texas Supreme Court's concern about regulation of attorneys is particularly pertinent in this case. Fiduciary duties are designed not only to protect the principal, but also to regulate the fiduciary agent. See Restatement (Second) of Agency § 469. Ultimately, suits for breach of fiduciary duty that seek disgorgement as opposed to compensatory damages are focused on regulating the behavior of the fiduciary, not remedying the harm to the client. This is such a suit, and it is Texas, not Pennsylvania, Ohio, or Indiana, that has an interest in regulating the behavior of Texas attorneys.

Finally, Taylor's contracts with Local Counsel required Local Counsel to include provisions in their contingent fee arrangements that Texas law would govern the contracts if suit was not brought in Local Counsel's home state. Local Counsel dutifully complied and included provisions stating "this contract shall be enforced and interpreted pursuant to the laws of Texas" in their retainer agreements with Plaintiffs. Although we generally enforce choice of law clauses, see Assicurazioni Generali, S.P.A. v. Clover, 195 F.3d 161, 164 (3d Cir. 1999); see also Restatement (Second) of Conflict of Laws, § 187, Plaintiffs are not in fact litigating the provisions of the contract in this action. Nonetheless, the fiduciary duty at issue arose under the contracts. It follows then that the duty created by the contracts should be enforced under the law chosen as applicable by the contracts. We would reach the same conclusion without the contractual choice of law provisions, but their existence supports our reasoning.

29

Defendants note that Defendants reside currently in three different states, Texas, Mississippi, and North Carolina, that "all of the alleged misleading disclosures or non-disclosures occurred in Pennsylvania, Ohio, and Indiana" and that "[P]laintiffs' relationship with the [D]efendants was centered in Pennsylvania, Ohio, and Indiana, where [P]laintiffs engaged [L]ocal [C]ounsel as their lawyers . . . [and] agreed pursuant to their retainer agreements that [L]ocal [C]ounsel might associate with lawyers from other states."

These factors are unconvincing. Defendants' current residencies are irrelevant to the issue of where the fiduciary duty arose and was breached. The claim that Plaintiffs' relationship with Defendants centered in Pennsylvania, Ohio, and Indiana is also specious, as Plaintiffs did not have any direct relationship with Defendants. Defendants' claim that the breach of the fiduciary duty of candor occurred in the northern states is debatable. The essence of Plaintiffs' claim is non-disclosure. There was no location in which the disclosure had to be made; the only requirement is that it be made. Arguably, the non-disclosure itself looks at the party to whom the disclosure is owed. Those plaintiffs were located in Pennsylvania, Ohio, and Indiana. But, fiduciary duty is also designed to regulate the fiduciary and to ensure that the fiduciary performs his duties. The alleged conduct causing the non-disclosure occurred (or rather failed to occur) in the Defendants' law offices, *i.e.*, Texas for Taylor and Cox, and Mississippi for Pritchard. The location of the breach of the duty of candor is not conclusive, and Defendants neglect to mention Plaintiffs' other allegation, which is the breach of fiduciary duty of loyalty. Any such breach clearly did not occur in Pennsylvania, Ohio, or Indiana, but in

30

Texas, which was where those owing loyalty could be found and was the nexus of the alleged conflicted multiple representation. In sum, the weight of a "significant relationship" analysis for choice of law strongly favors the application of Texas law.

## B. Defendants Owed Plaintiffs A Fiduciary Duty.

Defendants have argued that the choice of law issue is superfluous because they do not owe the Plaintiffs a fiduciary duty. We find such a suggestion preposterous. Defendants acted as counsel for all the Northerners, including the Plaintiffs: they held themselves out as the Northerners' attorneys, they entered into agreements regarding representation of the Northerners, they signed and filed pleadings on the Northerners' behalf, negotiated settlements for the Northerners' claims, and collected attorneys' fees from the Northerners. Clearly, the Defendants were acting as the Plaintiffs' attorneys.

It is well-settled law, regardless of jurisdiction, that attorneys owe their clients a fiduciary duty. Akron Bar Ass'n v. Williams, 104 Ohio St. 3d 317, 320 (Ohio 2004) ("The attorney stands in a fiduciary relationship with the client and should exercise professional judgment solely for the benefit of the client and free of compromising influences and loyalties."); In re Tsoutsouris, 748 N.E.2d 856, 859 (Ind. 2001); Office of Disciplinary Counsel v. Monsour, 549 Pa. 482, 486 (Pa. 1997) ("This public trust that an attorney owes his client is in the nature of a fiduciary relationship involving the highest standards of professional conduct."); Arce v. Burrow, 958 S.W.2d 239, 246 (Tex. Ct. App. 1997), rev'd on other grounds, 997 S.W.2d 229 (Tex. 1997). The duty includes undivided loyalty, candor,

31

and provision of material information. <u>Willis v. Maverick</u>, 760 S.W.2d 642, 645 (Tex. 1998) (provision of information material to the representation).

Defendants argue that "the fiduciary duties of disclosure at issue in this case were properly assumed and performed by each plaintiff's individually retained local counsel in Pennsylvania, Ohio, or Indiana." The performance of the duty is a question of fact for the jury, although some acts, as a matter of law, cannot constitute performance.[17] If Local Counsel did not perform their fiduciary duty, it does not matter that they assumed the duty because the fiduciary duty of co-counsel is a

---

[17] We note that even the examples of disclosure that *Defendants* choose to cite in their brief are inadequate to constitute disclosure in an attorney client situation. Defendants cite a form called "Acknowledgment for Full Release/Non Malignant" that states: "You have the right to find out the terms of the Agreement . . . and a copy of same will be available for your review." Defendants also cite a letter dated March 31, 2000, that states "Again, these may be considered aggregated settlements[,] and you are invited to schedule a time to come by our offices to see and read the entire settlement agreement as well as a list identifying the amount of money each client is being offered under this settlement."

While we recognize that additional facts in the record or that may be adduced at trial could support a finding of adequate disclosure, these statements alone do not constitute anything close to adequate disclosure.

joint obligation.[18] Even if the duty of disclosure is itself delegable, the duty of loyalty is inherently not, and in this case disclosure was necessary to fulfill the duty of loyalty. Thus, Local Counsel's alleged failure to fulfill the fiduciary duty of disclosure could hardly excuse the Defendants.

The fiduciary duty that an attorney owes clients is not a matter to be taken lightly. The duty may not be dispensed with or modified simply for the conveniences and economies of class actions. As then Judge Cardozo observed in In the Matter of Rous, "[m]embership in the bar is a privilege burdened with conditions." 221 N.Y. 81, 84 (1917) (Cardozo, J.). Among those conditions are the ethical obligations of giving clients full and meaningful disclosure of conflicts of interest so that the client may decide if the representation is in his or her best interest and of the terms of proposed settlement agreements, as it is the client's, not the attorney's, decision whether to settle a case. TEX. DISCIPLINARY R. PROF'L CONDUCT 1.03 (duty to keep client informed); 1.04(f) (fee division); 1.08(f) (disclosure of aggregate settlements). Even when clients are viewed as mere "inventory", they are still owed the renowned "punctilio of an honor the most sensitive." Meinhard v. Salmon, 249 N.Y. 458, 464 (N.Y. 1928) (Cardozo, J.). As the Texas Disciplinary Rules of Professional Conduct state the "obligation of lawyers

---

[18]We note that neither Texas' Disciplinary Rules of Professional Conduct nor the Model Rules of Professional Conduct directly address the question of allocation of professional duties in a co-counsel relationship, but in the case of duty of loyalty, its non-delegability is so patent as to be axiomatic.

33

is to maintain the highest standards of ethical conduct." TEX. DISCIPLINARY R. PROF'L CONDUCT, Preamble.

This is the cost of doing business as an attorney at law, and we will not countenance shortcuts. Disclosures to clients must be meaningful, by which we mean something beyond form disclosures, as clients must understand a conflict to give their informed consent to an intelligible waiver. Indeed, we are embarrassed to have to explain a matter so elementary to the legal profession that it speaks for itself: all attorneys in a co-counsel relationship individually owe each and every client the duty of loyalty. For it to be otherwise is inconceivable. There is no question that defendant attorneys owed Plaintiffs fiduciary duties.[19]

Because the District Court erred in its choice of law ruling, we will reverse the grant of summary judgment and will remand all of Plaintiffs' claims for adjudication under applicable Texas law. Certain Parcels of Land, 144 F.2d at 630 (remand appropriate when District Court erred on choice of law).

## C. Class Certification

The District Court's choice of law error does not affect the legal standard used to determine class certification. Class certification is a matter of federal statutory law, even when a

---

[19] We note that, even if Plaintiffs authorized settlement negotiations of their claims in aggregate, that alone does not constitute consent to the settlement nor waiver of disclosure of the complete settlement terms.

federal court sits in diversity. Nevertheless, a proper focus on fiduciary duty in this case changes our view of typicality, adequacy, predominance, superiority, and inconsistent standards of care as these elements present themselves in our consideration of class certification. Although class certification is a matter of federal statutory law (even when a federal court sits in diversity), a proper focus on fiduciary duty in this case may affect the District Court's view of typicality, adequacy, predominance, superiority, and inconsistent standards of care as these elements present themselves in its consideration of class certification. Thus, we will vacate the District Court's denial of class certification and we will direct the District Court to reconsider whether to certify the class in light of the application of Texas law.

## III. Conclusion

The District Court erred in its choice of law analysis, which led it to require that Plaintiffs demonstrate actual harm in a claim of breach of fiduciary duty when the remedy sought is disgorgement. We will vacate the District Court's grant of summary judgment to the Defendants and we will vacate the denial of class certification and we will remand the case for adjudication in light of applicable Texas law.

FUENTES, Circuit Judge, dissenting.

In my view, plaintiffs' failure to brief and argue the choice of law issue before the District Court and in their opening

brief on appeal constitutes waiver of that issue. Although the majority itself notes that "[p]laintiffs did not object to the District Court's choice of law ruling either at trial or in their original appellate briefs," part II.A, <u>supra</u> at \*\*\*, it concludes that the choice of law issue was not waived. I believe the majority's conclusion is contrary to our existing precedent, and I therefore respectfully dissent.

In their opening brief on appeal, plaintiffs summarized their points as follows:

> **I. There is no genuine issue of material fact that defendants committed serious and substantial breaches of their fiduciary duties.**
>
> **II. The District Court abused its discretion in refusing to certify the class.**

Plaintiffs' brief makes no mention of a choice of law issue, nor was the issue raised in the opposition or reply briefs. Prior to argument, at the Court's direction, counsel were requested to submit letter memoranda addressing the following issues:

> I. If [defendants] owe [plaintiffs] fiduciary duties, under what jurisdiction's law were these duties created?
>
> II. Is actual harm a required element of a breach of fiduciary duty claim in that jurisdiction?

36

In response to these questions, for the first time, plaintiffs argued that under Pennsylvania's choice of law rules, Texas substantive law should apply. Predictably, defendants argued in favor of the District Court's conclusion that the law of Pennsylvania, Ohio, and Indiana should apply. As the majority points out, Texas law is more favorable to the plaintiffs than the law of the other relevant states because it explicitly provides for disgorgement in a breach of fiduciary duty action without a showing of actual harm. See Part II.A.2.a, supra at ****.

We have stated on numerous occasions that "an appellant's failure to identify or argue an issue in his opening brief constitutes waiver of that issue on appeal." United States v. Pelullo, 399 F.3d 197, 222 (3d Cir. 2005). See also United States v. Vazquez, 271 F.3d 93, 107 (3d Cir. 2001) (en banc) (finding issue waived where appellant failed to raise it either in the District Court or initially on appeal). And, although our jurisprudence has not always been consistent on this point, our full court stated in Neely v. Club Med Management Services, Inc., that "choice of law issues may be waived." 63 F.3d 166, 180 & n.10 (3d Cir. 1995) (en banc).

In the majority's view, choice of law was "inherent in the parties' positions throughout this case" because plaintiffs cited repeatedly to Texas law in arguing that they satisfied the requirements for a breach of fiduciary duty claim. Although plaintiffs did cite Texas law to this Court and to the District Court, they also cited cases and rules from many other states in

37

support of their position.[20] The District Court could not reasonably have been expected to interpret this endless stream of citation as an indication that plaintiffs were raising a choice of law argument, or as an assertion that Texas law applied. See Brennan v. Norton, 350 F.3d 399, 418 (3d Cir. 2003) ("'[T]he crucial question regarding waiver is whether [plaintiff] presented the argument with sufficient specificity to alert the district court.'") (quoting Keenan v. City of Philadelphia, 983 F.2d 459, 471 (3d Cir. 1993)).

In my view, plaintiffs' references to Texas law did not satisfy our usual requirement that all issues be clearly articulated in a party's briefs to avoid waiver. See, e.g., Pa. Dep't of Pub. Welfare v. U.S. Dep't of Health and Human Servs., 101 F.3d 939, 945 (3d Cir. 1996) (holding an issue waived despite a "conclusory assertion" regarding the issue in a brief); Laborers' Int'l Union of N. Am., AFL-CIO v. Foster Wheeler Corp., 26 F.3d 375, 398 (3d Cir. 1994) ("An issue is waived unless a party raises it in its opening brief, and for those purposes a passing reference to an issue . . . will not suffice to bring that issue before this court.") (internal quotation marks omitted). See also Fed. R. App. P. 28 (requiring briefs on appeal to contain "a statement of the issues presented for review" and "appellant's contentions and the reasons for them").

---

[20] In their brief to this Court, plaintiffs cited cases from Texas, Pennsylvania, California, Georgia, New York, Delaware, and Minnesota, among other jurisdictions, regarding breach of fiduciary duty doctrine.

While we have discretion to consider issues that have been waived, we should do so only in "exceptional circumstances," such as where "'the public interest requires that the issues be heard or manifest injustice would result from the failure to consider such issues.'" In re Gen. DataComm Indus., Inc., 407 F.3d 616, 624 n.13 (3d Cir. 2005) (quoting Brown v. Philip Morris Inc., 250 F.3d 789, 799 (3d Cir. 2001)). Here, no urgent public interest calls for special treatment, nor did anything in the District Court's handling of the case below constitute such grievous error that a "manifest injustice" may result.[21] Cf. Bagot v. Ashcroft, 398 F.3d 252, 256 (3d Cir. 2005) (finding exceptional circumstances to overcome waiver where the Court's failure to consider an argument "would result in the substantial injustice of deporting an American citizen").

Accordingly, I would decline to review the District Court's conclusion that the laws of Indiana, Ohio, and Pennsylvania are applicable in this case. Thus, I would affirm

---

[21] In fact, even if the choice of law issue had not been waived, a close question would be presented as to which state's law applies under Pennsylvania's choice of law analysis. That analysis turns on "which state has the greater interest in the application of its law," and requires a consideration of the "weight of a particular state's contacts . . . on a qualitative rather than quantitative scale." Troxel v. A.I. duPont Inst., 636 A.2d 1179, 1181 (Pa. Super. 1994). The District Court reasonably could have concluded that Pennsylvania, Ohio, and Indiana have a greater interest in application of their laws than Texas, on the ground that plaintiffs are from those three states and that the alleged breach of the duty to disclose occurred in those states.

the judgment of the District Court. As the majority demonstrates, the courts of Pennsylvania, Ohio, and Indiana appear to require a showing of actual harm for a breach of fiduciary duty claim, and for the related claims of civil conspiracy to breach fiduciary duty and aiding and abetting breach of fiduciary duty. See Part II.A.2, supra p. ***. Although those courts have not specifically addressed whether the actual harm requirement applies in a disgorgement action, there are no grounds for presuming a disgorgement exception in those jurisdictions.

As the majority itself concedes, if plaintiffs are required to show actual injury to succeed on their claims, they lose as to both elements of their appeal. See Part II.A, supra p. ***. Plaintiffs cannot demonstrate that, absent defendants' alleged conduct, they would have achieved a better outcome. For this reason, I would affirm the District Court's grant of summary judgment and, consequently, would not reach the class certification issue.