**[J-95-2016][M.O. – Wecht, J.]**

**IN THE SUPREME COURT OF PENNSYLVANIA**
**EASTERN DISTRICT**

| | | |
|---|---|---|
| CITY OF PHILADELPHIA, | : | No. 26 EAP 2015 |
| | : | |
| Appellee | : | Appeal from the Order of the |
| | : | Commonwealth Court entered on |
| | : | 12/11/14 at No. 1347 C.D. 2013, |
| v. | : | affirming the order dated 7/9/13 of the |
| | : | Court of Common Pleas, Philadelphia |
| | : | County, Civil Division at No. 2693 |
| | : | September term 2009 |
| NATHAN LERNER, | : | |
| | : | ARGUED: March 8, 2016 |
| Appellant | : | RE-SUBMITTED: August, 17, 2016 |

**_DISSENTING OPINION_**

**CHIEF JUSTICE SAYLOR**                    **DECIDED: November 22, 2016**

I join Justice Donohue's dissenting opinion. To the degree that the majority premises its disposition upon the doctrine of waiver, I offer the following comments.

When addressing concerns about issue preservation and presentation, my own thoughts align with those courts which remain "mindful of the prophylactic and prudential origins of the doctrine." *Huber v. Taylor*, 469 F.3d 67, 75 (3d Cir. 2006). For example, in the federal judicial system, the doctrine of plain error, as well as discretionary decision-making authority invested in the courts of appeals, continue to serve as safety valves to alleviate the potential for injustice.[1]

---

[1] *See, e.g.,* Fed. R. Crim. P. 52(b) (providing for consideration of "[a] plain error that affects substantial rights" even though the error "was not brought to the court's attention"); *Singleton v. Wulff*, 428 U.S. 106, 121, 96 S. Ct. 2868, 2877 (1976) ("The (continued…)

This Court, of course, has moved far away from such prudential roots in the direction of strict enforcement of waiver, for example, via its abrogation of the plain error doctrine and curtailment of relaxed waiver in capital litigation.[2] In decisional law referenced by the majority, the Court also converted what, on its face, appeared to be a discretionary waiver practice pertaining to the filing of statements of matters complained of on appeal, *see* Pa.R.A.P. 1925 (superseded) ("A failure to comply with such directive *may* be considered by the appellate court as a waiver . . .." (emphasis added)), into a mandatory waiver. *See Commonwealth v. Hill*, 609 Pa. 410, 422, 16 A.3d 484, 491 (2011) (quoting *Commonwealth v. Lord*, 553 Pa. 415, 420, 719 A.2d 306, 309 (1998), for the proposition that "[a]ny issues not raised in a [statement of matters complained of on appeal] *will* be deemed waived" (emphasis adjusted)).

I note, however, that this particular escalation of waiver precepts generated an outcry from members of the legal community. The controversy was reflected, for example, in resolutions submitted to the Court by the Pennsylvania Bar Association, the Philadelphia Bar Association, and the Allegheny County Bar Association. *See, e.g.*, Pa.

---

(…continued)

matter of what questions may be taken up and resolved for the first time on appeal is one left primarily to the discretion of the courts of appeals, to be exercised on the facts of individual cases[;] . . . [c]ertainly there are circumstances in which a federal appellate court is justified in resolving an issue not passed on below, as where the proper resolution is beyond any doubt, or where 'injustice might otherwise result.'" (citations omitted)).

[2] *See Dilliplaine v. Lehigh Valley Trust Co.*, 457 Pa. 255, 260, 322 A.2d 114, 117 (1974) (abolishing the plain or fundamental error doctrine in civil cases); *Commonwealth v. Clair*, 458 Pa. 418, 423, 326 A.2d 272, 274 (1974) (same, for criminal cases); *Commonwealth v. Freeman*, 573 Pa. 532, 560, 827 A.2d 385, 402 (2003) (curtaining the relaxed waiver doctrine in capital direct appeals); *Commonwealth v. Albrecht*, 554 Pa. 31, 45, 720 A.2d 693, 700 (1998) (abolishing relaxed waiver in capital post-conviction matters).

Bar Ass'n, Appellate Advocacy Comm. Resolution dated Aug. 22, 2006 (urging the Court to ameliorate its strict waiver practice relative to the submission of statements of matters complained of on appeal, given that "merits resolution of disputes is preferable to waiver and enhances respect for the courts and the law by the parties to the dispute and society generally"). Ultimately, this Court responded by revising the relevant Rule of Appellate Procedure to account for special circumstances. *See* Pa.R.A.P. 1925(c).

As a general rule, I support the enforcement of waiver constructs as a means to sharpen controversies and maintain fairness to opposing litigants. I would nevertheless recognize exceptions for extraordinary circumstances (as pertain, for example, in the context of Rule of Appellate Procedure 1925, as discussed above). In this regard, harkening back to earlier decisions of this Court, I would submit, the judiciary should retain some latitude to disregard waiver where the alternative is to involve the courts in the enforcement of a fraudulent or sham judgment. *See Cochran v. Eldridge*, 49 Pa. 365, 370 (Pa. 1865) ("[W]hen it is alleged upon adequate proofs that a judgment . . . has been obtained by a suppression of truth which it was the duty of the party to disclose or by the suggestion of a falsehood or by any of the indefinite and therefore undefinable means by which fraud may be practised, no court will allow itself, its records, and the process of law to be used as instruments of fraud."); *accord Sherman v. Yiddisher Kultur Farband*, 375 Pa. 108, 120, 99 A.2d 868, 871 (1953) (Musmanno, J., dissenting) ("Every tribunal in the United States does honor to the venerable rule that courts possess inherent power to control, amend, open and vacate their decisions according to circumstance, and especially where vitiated by fraud).

In the present case, I find the circumstances to be quite extraordinary. It is greatly disconcerting, to me at least, that the City of Philadelphia's Department of Revenue had or has a practice of issuing fictitious and arbitrary tax assessments,

designed to frighten citizens, that is so common as to have acquired a name: "jeopardy assessment." N.T., June 26, 2013, at 27; *see also id.* at 43-44 (reflecting the unrebutted testimony of a revenue collection manager that her supervisor engages in a practice of "really just mak[ing numbers] up . . . try[ing] to make it real high").[3]  There would appear to be no formal protocol or procedure whereby the resort by Department personnel to artifice is necessarily confined to purported scofflaws.  Apparently, at the discretion (or whim) of Department personnel, "jeopardy" (or sham) assessments may be inflicted on the citizenry at large, including those persons who may be lacking in education and/or resources or are otherwise vulnerable.

Whether or not the common pleas court should have permitted inquiry into the Department's pernicious practices underlying a tax assessment in the context of a collection proceeding, the present record comes to this Court as it does.  At bottom, I simply do not believe that a court of last resort should in any way permit to be condoned or validated what appears very clearly, on this record, to be an arbitrary judgment obtained via such subversive means.  To the extent that our refusal to do so would foster other challenges to tax assessments in Philadelphia, I believe that should be seen as arising as a consequence of the Department's own untenable conduct, and not the appropriate unwillingness of the judiciary to permit it to go unredressed.

Justices Todd and Donohue join this dissenting opinion.

---

[3] A true jeopardy assessment is a statutorily-authorized, extraordinary measure employed by taxing authorities to address exigent circumstances so that an assessment or collection is not jeopardized by delay.  *See, e.g.*, 72 P.S. §7339(a).  This contrasts with the informal conception based on outright contrivance manifested on the present record, whereby Department personnel simply "put [an arbitrary] figure out into our data base with the hopes that it will elicit a response from the taxpayer."  N.T., June 26, 2013, at 27.