

2009 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-31-2009

# Powers v. Lycoming Engines

Precedential or Non-Precedential: Non-Precedential

Docket No. 07-4710

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2009

Recommended Citation

"Powers v. Lycoming Engines" (2009). *2009 Decisions*. Paper 1638.
http://digitalcommons.law.villanova.edu/thirdcircuit_2009/1638

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2009 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 07-4710

CHARLES POWERS, ON HIS OWN BEHALF
AND ON BEHALF OF THE CLASS DEFINED HEREIN;
CYNTHIA ANN POWERS

v.

LYCOMING ENGINES, A DIVISION OF AVCO CORPORATION;
AVCO CORPORATION; TEXTRON, INC.

(E.D. Pa. No. 06-cv-02993)

PLANE TIME, LLC,
on its own behalf and on behalf
of all others similarly situated

v.

LYCOMING ENGINES,
a Division of Avco Corporation;
AVCO CORPORATION; TEXTRON, INC.

(E.D. Pa. No. 06-cv-04228)

Avco Corporation, Appellant

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
District Judge: Honorable Timothy J. Savage

ARGUED DECEMBER 1, 2008

1

Before:  AMBRO, WEIS and VAN ANTWERPEN, <u>Circuit</u> Judges.

(Filed: March 31, 2009)

––––––––––––––

Catherine B. Slavin, Esquire (ARGUED)
Cozen O'Connor
1900 Market Street, 3rd Floor
Philadelphia,  PA  19103

<u>Attorney for Appellant AVCO Corporation, on behalf of its Lycoming Engines Division</u>

Joseph F. Roda, Esquire (ARGUED)
Michele S. Burkholder, Esquire
RodaNast, P.C.
801 Estelle Drive
Lancaster,  PA  17601

Terrianne A. Benedetto, Esq.
Jonathan Shub, Esq.
Seeger Weiss
1515 Market Street, Suite 1380
Philadelphia, PA 19102

<u>Attorneys for Appellees Charles Powers, Cynthia Powers and Plane Time, LLC</u>

––––––––––––––

OPINION

––––––––––––––

WEIS, <u>Circuit</u> Judge.

Defendants appeal from a District Court's order granting the plaintiffs' motion to certify a class action.  We conclude that the Court's choice-of-law analysis was incomplete and did not support certification.  Accordingly, we will vacate and remand for further consideration.

The parties are well aware of the facts and because this opinion is not precedential, we need not repeat in detail the events giving rise to the claim.

Plaintiffs in this putative nationwide class action are purchasers of aircraft equipped with engines produced by defendants. The amended complaint asserts that the crankshafts in the engines are defective, similar models have failed in a number of instances, and are more vulnerable to stresses in their ordinary and foreseeable use. Two causes of action remain in the case -- theories of unjust enrichment and breach of implied warranty of merchantability, both grounded in state law.

The District Court certified a class of,

> "All persons or entities who reside in the District of Columbia
> or any state, except California, who, before April 11, 2006
> purchased an aircraft subject to Lycoming Mandatory Service
> Bulletin 569A and either: (a) currently own that aircraft; or
> (b) sold that aircraft on or after April 11, 2006. The Class
> shall be divided into two sublcasses consisting of: (a) those
> who currently own the subject aircraft and (b) those who sold
> the aircraft on or after April 11, 2006."

We granted leave to appeal and now review the District Court's decision to certify a class under an abuse of discretion standard. Danvers Motor Co., Inc. v. Ford Motor Co., 543 F.3d 141, 147 (3d Cir. 2008).

The Federal Rules of Civil Procedure list the requirements plaintiffs must satisfy before a class may be certified. They must meet "all of the [subsections] of Rule

3

23(a) and come within one provision of Rule 23(b)." Georgine v. Amchem Prods., Inc., 83 F.3d 610, 624 (3d Cir. 1996), aff'd sub nom., Amchem Prods., Inc. v. Windsor, 521 U.S. 591 (1997). They must show

> "(1) [numerosity, i.e.,] the class is so numerous that joinder of all members is impracticable;
> (2) [commonality, i.e.,] there are questions of law or fact common to the class;
> (3) [typicality, i.e.,] the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> (4) [adequacy of representation, i.e.,] the representative parties will fairly and adequately protect the interests of the class."

Fed. R. Civ. P. 23(a).

The subsection of Rule 23(b) relevant here directs plaintiffs to demonstrate predominance and superiority, i.e., "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

To determine if the requirements of the Rule have been satisfied, a district court must conduct a rigorous analysis. In re Hydrogen Peroxide Antitrust Litig., 552 F.3d 305, 309 (3d Cir. 2008). The mandates "set out in Rule 23 are not mere pleading rules." Id. at 316. Unless each requirement is actually met, a class cannot be certified.

Id. at 320.

When conducting its strict inquiry, a "court may 'delve beyond the pleadings to determine whether the requirements for class certification are satisfied.'" Id. at 316 (quoting Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 259 F.3d 154, 167 (3d Cir. 2001)). "An overlap between a class certification requirement and the merits of a claim is no reason to decline to resolve relevant disputes when necessary to determine whether a class certification requirement is met." Id. Courts may inquire into a claim's merits and "'consider the substantive elements of the plaintiffs' case in order to envision the form that a trial on those issues would take.'" Id. at 317 (quoting Newton, 259 F.3d at 166).

Review of the merits becomes especially important when considering the predominance requirement of Rule 23(b)(3). Id. at 310-11. "[T]he 'nature of the evidence that will suffice to resolve a question determines whether the question is common or individual.'" Id. at 311 (quoting Blades v. Monsanto Co., 400 F.3d 562, 566 (8th Cir. 2005)). Therefore, "'a district court must formulate some prediction as to how specific issues will play out in order to determine whether common or individual issues predominate in a given case.'" Id. (quoting In re New Motor Vehicles Can. Exp. Antitrust Litig., 522 F.3d 6, 20 (1st Cir. 2008)). Class certification is not proper "[i]f proof of the essential elements of the cause of action requires individual treatment." Id. (quoting Newton, 259 F.3d at 172).

In the matter before us, the District Court determined that plaintiffs had

5

complied with the requirements of Rule 23. After first conducting a choice-of-law analysis, the Court concluded that Pennsylvania law uniformly applied to both causes of action and that the numerosity, commonality, typicality, and adequacy of representation elements of Rule 23(a) were present. In addition, predominance and superiority of a class action were evident to the Court, satisfying Rule 23(b)(3). When addressing superiority, the Court noted that because Pennsylvania law applied to all class members, the case could easily be managed at trial.

The District Court was correct to begin its analysis by considering choice of law. A necessary precondition to deciding Rule 23 issues is a determination of the state whose law will apply. See Huber v. Taylor, 469 F.3d 67, 82-83 (3d. Cir. 2006) (consideration of the requirements for certification must be conducted in light of the correct jurisdiction's law); see also Spence v. Glock, Ges.m.b.H., 227 F.3d 308, 309-10 (5th Cir. 2000) (error in choice-of-law analysis resulted in an abuse of discretion "on the issue of predominance under Rule 23(b)(3)" and required decertification of the class); Castano v. Am. Tobacco Co., 84 F.3d 734, 741 (5th Cir. 1996) ("that a court know[s] which law will apply before making a predominance determination is especially important when there may be differences in state law"). We exercise plenary review over the District Court's choice-of-law analysis to determine which state's substantive law governs. Berg Chilling Sys., Inc. v. Hull Corp., 435 F.3d 455, 462 (3d Cir. 2006).

In diversity cases such as this, attempts to structure and certify nationwide classes involving plaintiffs in all fifty states often turn on whether the law of a single state

6

or multiple states should be applied. Irreconcilable conflicts can be an impediment to certification because they can offset the analysis of the legal commonality, typicality, and adequacy requirements of Rule 23(a), and the superiority and predominance factors of Rule 23(b)(3). For example, we have observed that nationwide class action movants must credibly demonstrate, through an "extensive analysis" of state law variances, "that class certification does not present insuperable obstacles." In re Sch. Asbestos Litig., 789 F.2d 996, 1010 (3d Cir. 1986). This comprehensive analysis is necessary because aggregate class action should not alter the applicable substantive legal rights of the plaintiffs. See Phillips Petroleum Co. v. Shutts, 472 U.S. 797, 821 (1985) (constitutional limitations on choice of law apply even in nationwide class actions); see also Amchem Prods., 83 F.3d at 627 (court must conduct an "individualized choice of law analysis to each plaintiff's claims" even in nationwide class actions).

Because plaintiffs commenced their action in Pennsylvania, we look to that state's law on conflicts. Huber, 469 F.3d at 73-74. Pennsylvania has "adopted a flexible choice of law rule which weighs the interests [its] sister-states may have in the transaction." Commonwealth v. Eichinger, 915 A.2d 1122, 1133 (Pa. 2007); see also Griffith v. United Air Lines, Inc., 203 A.2d 796, 805 (Pa. 1964). Application of that rule requires a multi-faceted analysis, Hammersmith v. TIG Ins. Co., 480 F.3d 220, 230-31 (3d Cir. 2007), and since the inquiry "is issue-specific, different states' laws may apply to different issues in a single case." Berg Chilling Sys., Inc., 435 F.3d at 462.

The first level of scrutiny considers whether "an *actual* or real conflict

7

[exists] between the potentially applicable laws." Hammersmith, 480 F.3d at 230. Then, "[i]f there are relevant differences between the laws, then the court should examine the governmental policies underlying each law, and classify the conflict as a 'true,' 'false,' or an 'unprovided-for' [(i.e., no interest)] situation." Id. A district court must conduct a deeper analysis only where "*both* jurisdictions' interests would be impaired by the application of the other's laws (i.e., there is a true conflict)." Id.

The second level of scrutiny affects only true conflicts and when they exist, the Court must "determine which state has the 'greater interest in the application of its law.'" Id. at 231 (quoting Cipolla v. Shaposka, 267 A.2d 854, 856 (Pa. 1970)). Pennsylvania requires that courts making that determination use a "combination of the approaches of both the Restatement II (contacts establishing significant relationships) and interests analysis (qualitative appraisal of the relevant States' policies with respect to the controversy)." Id. (quoting Melville v. Am. Home Assurance Co., 584 F.2d 1306, 1311 (3d Cir. 1978)) (internal quotations omitted).

It is not enough to simply count the states' contacts; they should be weighed "on a qualitative scale according to their relation to the policies and interests underlying the [particular] issue." Id. (quoting Shields v. Consol. Rail Corp., 810 F.2d 397, 400 (3d Cir. 1987)) (alteration in original) (internal quotations omitted).

Once the survey has been completed and a choice of law is made, the Court must then consider whether applying that law to all plaintiffs and class members violates the Due Process and Full Faith and Credit Clauses. "[F]or a State's substantive law to be

8

selected in a constitutionally permissible manner, that State must have a significant contact or significant aggregation of contacts, creating state interests, such that choice of its law is neither arbitrary nor fundamentally unfair." Allstate Ins. Co. v. Hague, 449 U.S. 302, 312-13 (1981) (plurality opinion); see generally, 1 Joseph M. McLaughlin, McLaughlin on Class Actions: Law and Practice § 5:46 (4th ed. 2007).

Determining whether such contacts and interests exist requires an individualized scrutiny of "the claims asserted by each member of the plaintiff class." Shutts, 472 U.S. at 821-22; see also Amchem Prods., 83 F.3d at 627 (explaining that Shutts requires an individualized choice-of-law analysis even in nationwide class actions); In re St. Jude Med., Inc., 425 F.3d 1116, 1120 (8th Cir. 2005) (same). The expectations of the parties constitute "an important element" in the inquiry. Shutts, 472 U.S. at 822.

Our review of the record persuades us that the choice-of-law examination here had its shortcomings. As one instance, the District Court observed in its unjust enrichment analysis that a true conflict existed between the relevant states' laws because Pennsylvania and some others preclude recovery if the parties had an express contract.[1] Believing unjust enrichment to be a hybrid of contract and tort law, the Court purportedly weighed the factors from sections 188 (concerning contracts) and 148 (relating to torts involving fraud and misrepresentation) of the Restatement (Second) Conflict of Laws and

---

[1] We are also doubtful that the first step in the choice-of-law analysis was fully explored by the Court in the unjust enrichment claim and its relevant subsidiary issues.

concluded that Pennsylvania "has the most significant relationship to the transaction and the parties." Defendants were sued in Pennsylvania, manufactured the crankshafts there, "issued service bulletins and instructions . . . about the crankshafts . . . in Pennsylvania, and plan[] to replace [them] [t]here."[2]

Contacts relevant to plaintiffs, the Court presumed, "took place in their home states where they purchased, operate, and moor their aircraft." Those contacts were of minor significance, however, because the mobility of a plane permitted it to "have been purchased and transported from a state other than a plaintiff's home state" and the crankshafts are "part of aircraft manufactured by others, [making it] unlikely that the plaintiffs purchased the aircraft in reliance on anything [defendants] may have represented."

Pennsylvania, however, does not consider unjust enrichment to be either an action in tort or contract. Unjust enrichment, rather, an equitable remedy and synonym for *quantum meruit*, is "a form of restitution." Mitchell v. Moore, 729 A.2d 1200, 1202 n.2 (Pa. Super. Ct. 1999); see also Ne. Fence & Iron Works, Inc. v. Murphy Quigley Co., 933 A.2d 664, 667 (Pa. Super. Ct. 2007); Sack v. Feinman, 432 A.2d 971, 974 (Pa. 1981) (citing Restatement of Restitution § 1 (1937) as a source for the elements of an unjust enrichment claim); Meehan v. Cheltenham Twp., 189 A.2d 593, 595 (Pa. 1963) (same).

---

[2] The record reveals that Lycoming Engines, though located in Pennsylvania, is a division of AVCO Corporation, a Delaware corporation with its principal place of business in Rhode Island. We note also that defendants contend the crankshafts were forged in Texas.

10

The Restatement views restitution as an area of the law "which is neither contract nor tort." Restatement (Second) of Conflict of Laws § 221 introductory note (1971).

If there is a claim under Pennsylvania law that falls within the scope of restitution under the Restatement (Second) Conflict of Laws,[3] the following factors should have been addressed in the choice-of-law examination: (1) the place where the parties' relationship was centered; (2) the state where defendants received the alleged benefit or enrichment; (3) the location where the act bestowing the enrichment or benefit was done; (4) the parties' domicile, residence, place of business, and place of incorporation; and (5) the jurisdiction "where a physical thing . . . , which was substantially related to the enrichment, was situated at the time of the enrichment." Id. § 221(2) (1971).

The Court's analysis of the unjust enrichment issue lacked any discussion of the policies underlying the various states' laws permitting or precluding such a claim when an express contract exists. The District Court failed to "weigh the [Restatement] contacts on a qualitative scale according to their relation to the policies and interests underlying the . . . issue." Hammersmith, 480 F.3d at 231 (quoting Shields, 810 F.2d at

_____

[3] Although we have found no instance in which Pennsylvania has adopted section 221, our case law, in explaining the state's choice-of-law approach, directs courts to "use the Second Restatement of Conflict of laws as a starting point." Berg Chilling Sys., Inc. v. Hull Corp., 435 F.3d 455, 463 (3d Cir. 2006). "[T]o properly apply the Second Restatement and remain true to the spirit of Pennsylvania's 'flexible approach,' [courts] must . . . characterize the particular issue . . . in order to settle on a given section of the Restatement for guidance." Id. Because Pennsylvania considers unjust enrichment to be a form of restitution, we believe applying section 221 would be proper.

11

400).

In another phase of the choice-of-law analysis, the Court observed that a true conflict exists between Pennsylvania and the states which mandate that plaintiffs demonstrate privity of contract in a claim for breach of the implied warranty of merchantability. After describing several of the reasons certain jurisdictions require privity, the Court concluded that Pennsylvania law governed because, among other things, "[t]he manufacturer is located in Pennsylvania" and the privity states' interests in protecting their resident manufacturers will not be impinged.

The Court did not conduct an intensive multi-step choice-of-law analysis on the breach of warranty issue, as is required in Pennsylvania. Its treatment of the choice-of-law issue lacked a satisfactory discussion of the relevant Restatement factors, here "(1) the place of contracting; (2) the place of negotiation . . .; (3) the place of performance; (4) the location of the subject matter of the contract; and (5) the domicile, residence, nationality, place of incorporation and place of business of the parties." Id. at 233. Similarly, the Court again failed to perform a sufficient qualitative weighing of the contacts "according to their relation to the policies and interests underlying the . . . issue." Id. at 231 (quoting Shields, 810 F.2d at 400). The qualitative weighing which occurred was questionable.

A proper application of Pennsylvania's choice-of-law principles may have indicated that the law of more than one state governs the parties' dispute. Other Courts of

12

Appeals have confronted similar scenarios. See, e.g., In re Bridgestone/Firestone, Inc., 288 F.3d 1012, 1018 (7th Cir. 2002); Kirkpatrick v. J.C. Bradford & Co., 827 F.2d 718, 725 n.6 (11th Cir. 1987).

Attempting to apply the law of a multiplicity of jurisdictions can present problems of manageability for class certification under Rule 23(b)(3).[4] See In re Bridgestone/Firestone, Inc., 288 F.3d at 1018 ("[b]ecause these claims must be adjudicated under the law of so many jurisdictions, a single nationwide class is not manageable"); In re Am. Med. Sys., Inc., 75 F.3d 1069, 1085 (6th Cir. 1996) ("[i]f more than a few of the laws of the fifty states differ, the district judge would face an impossible task of instructing a jury on the relevant law").

If a complete choice-of-law analysis had been conducted and indicated that more than one jurisdiction's law applied, consideration should have been given to "whether variations in state laws present the types of insuperable obstacles which render

---

[4] We note that plaintiffs did not present a plan to cope with the various theories of liability or damages, which is becoming a commonplace requirement in class-action litigation. See In re Hydrogen Peroxide Antitrust Litig., 552 F.3d 305, 319 (3d Cir. 2008). A plan may be particularly important in this type of nationwide class action following our decision in In re Hydrogen Peroxide, where we made clear that "conditional" certification is no longer acceptable. Id. at 318-19. Instead, each Rule 23 requirement must be subject to a rigorous analysis prior to certification. Id. at 316, 320.

In Bristow v. Lycoming Engines, No. Civ. S-06-1947 LKK/GGH, 2008 WL 850306 (E.D. Cal. Mar. 28, 2008), a case based on the same crankshaft defect and applying the law of only one state, class-action status was vacated because the plaintiff was unable to show class-wide damages and the manageability plan failed to resolve the problem.

class action litigation unmanageable." In re Warfarin Sodium Antitrust Litig., 391 F.3d 516, 529 (3d Cir. 2004). Another relevant inquiry would have been "whether varying state laws [could] be grouped by shared elements and applied as a unit in such a way that the litigation class is manageable." Id.; see also In re Prudential Ins. Co. of Am. Sales Practice Litig., 148 F.3d 283, 315 (3d Cir. 1998) (finding various states' laws could be applied in this fashion); In re Sch. Asbestos Litig., 789 F.2d at 1010-11 (plaintiffs made "a credible showing" that a class action could be managed in this fashion).

We conclude that the District Court's choice-of-law exploration was insufficient and, consequently, the inquiry into Rule 23's predominance and superiority requirements rested on questionable premises. An order certifying a class under such circumstances requires a remand for an entirely new choice-of-law determination for both the unjust enrichment and breach of implied warranty claims. See In re St. Jude Med., Inc., 425 F.3d at 1120-21 (failure to adequately evaluate choice-of-law issue necessitates remand). Once a complete choice-of-law analysis has been conducted, a reevaluation of whether plaintiffs have satisfied Rule 23's requirements for class certification will be appropriate. See Huber, 469 F.3d at 82-83.

The Order of the District Court is vacated and the case is remanded for further proceedings consistent with this Opinion.

_____

14